McAULEY, Respondent, *v.* CASUALTY COMPANY OF AMERICA, Appellant.

(No. 2,526.)

(Submitted May 26, 1908.  Decided June 1, 1908.)

[96 Pac. 131.]

*Life and Accident Insurance—Liability of Insurer—Evidence—Insufficiency—Burden of Proof.*

Life and Accident Insurance—Evidence—Insufficiency.
   1.   A life and accident insurance policy provided, *inter alia*, for payment of a stipulated sum only in the event that injuries, effected solely through external, violent and accidental means, should directly and independently of all other causes result in death.   Plaintiff's wife (the insured), in stepping from a street-car, sustained an abrasion of her limb.   She died from erysipelas.   Evidence examined and *held* to show an absence of proof that the death of insured resulted from injuries as provided in the policy, or that the disease was communicated to her by the wound on her limb, or that the abrasion caused it to become manifest, and that therefore plaintiff was not entitled to recover.

Same—Burden of Proof.
   2.   Since actions on life and accident insurance policies are founded upon express contract, the burden rests upon plaintiff to prove, by some substantive testimony, that the event has occurred upon the happening of which the insurer has agreed to become liable.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

Action by John McAuley against the Casualty Company of America.   Judgment for plaintiff, and defendant appeals from the judgment and an order denying it a new trial.   Reversed and remanded.

Statement of the Case by the Justice Delivering the Opinion.

This action is founded upon a life and accident insurance policy.   The defendant company issued a policy of insurance to the plaintiff, in which plaintiff's wife, Anna McAuley, was named as beneficiary in case of his death.   It was further provided: "This policy shall also insure the person named (as beneficiary), against  *  *  *·  death caused directly in the

manner set forth in clause B, as follows: If the death of the beneficiary shall so occur within ninety days from said injuries, the company will pay to the assured the principal sum," etc.   The material portions of clauses A and B are as follows:

"A. Accident Indemnity.  In case the assured shall, during the term of this insurance, sustain bodily injuries effected solely through external, violent and accidental means—suicide, sane or insane, not included—which injuries shall, directly and independently of all other causes, result in loss of life, limb, sight or time, as herein defined, the company will pay the amounts specified below: [Here follow four paragraphs relating to injuries not resulting in death.]   (5) Or, if death shall so result within ninety days, the company will pay the principal sum to the beneficiary, if surviving, otherwise to the executors, administrators or assigns of the assured.

"B. Double Indemnity.  If these injuries are received while riding as a passenger in or on a public conveyance, provided for passenger service, and propelled by steam, compressed air, gasoline, naphtha, electricity or cable, including passenger elevators, or while in a burning building, the amounts otherwise payable under clause A shall be doubled."

The complaint alleges: "That said contract [of insurance] provides * * * that in case the beneficiary * * * die * * * as the result of bodily injuries effected solely through external, violent or accidental means, received while riding as a passenger in or upon a public conveyance provided for passenger service and propelled by * * * electricity, * * * then the amount to be paid for such * * * death shall be double the amount mentioned in said contract.  That on the nineteenth day of October, 1906, said Anna McAuley, * * * while riding and being transported as a passenger on a street-car * * * propelled by electricity, * * * a public conveyance for the carriage of passengers, was injured in her body and person while alighting from said car, * * * from which injuries she died on October 24, 1906."  The defendant's answer put in issue the question we shall consider.

At the trial the plaintiff testified: "I saw my wife getting off the street-car, and according to all appearances she got hurt, got a scratch. I know positively that she was injured at the time, and I saw her immediately after that. I saw her getting off the car. I saw that she was hurt and lame. Then she tried to hobble along to the house until I met her. She was trying to walk toward the house, and then I helped her. As to how far I had to go to help her, I believe the street-car track is about forty feet in front of the house. I was working in the yard when I heard the car stop, and I could see her getting off the car, and the first step she took I could see she was crippled; she tried the best way she could to walk, and was limping, and then I went over to meet her. She had not gotten across the other track when I reached her; there are double tracks there; I met her between the two tracks; I helped her into the house, and helped her to dress her leg. There was skin taken off on the calf of the right leg. At the time when I first met her, immediately after she got off the car, she said she hurt her leg getting off the car. It could not have been over half a minute from the time I saw her getting off the car until she made this statement to me. I helped her to put liniment and a bandage on her leg. After we got into the house and got her stocking off, the skin— maybe as big as the end of my finger—was taken off the calf of her leg, and after a day or two we did not think very much of it, only thought it was sore, and then, on the morning of the third day after that, she was taken awful bad with chills and with soreness and swelling and inflammation in her limb, and it spread clear up to her body after a while. I could not say whether she had any blood poisoning or erysipelas before I married her. We were married nineteen years, and during that time she had never suffered from any infection of the limb."

Agnes D. Smith, the nurse, testified: "I saw the injury to the calf of Mrs. McAuley's right leg. It was just a small scratch— the skin laid down—just a three-cornered scratch. The swelling she had for two or three days before she died was in the right leg. I did not notice her lame."

Dr. I. D. Freund testified: "I don't know what Mrs. McAuley died of, but I remember when she died. I know of an external injury that was on her body. The injury was on her entire leg, but I have forgotten which one; I think the injury was below the knee. There was a violent inflammation of the limb; the limb was enormously swollen and discolored. The cause of it, we thought at the time, was erysipelas; it is caused from infection; I suppose the cause of infection was a germ peculiar to that disease. I don't know what provoked the attack from that germ; if there was an abrasion, that would probably give entrance; I don't remember how large the abrasion was; this limb was very much distorted and discolored at the time, and enormously swollen, and it was not very extensive, though. I know nothing about Mrs. McAuley's previous condition; she was unconscious when I saw her, and evidently dying. I was not the attending physician; Dr. McDonald was the attending physician. The ordinary name of the disease that caused that swelling is erysipelas; erysipelas is a manifestation of blood poisoning."

Dr. H. J. McDonald, the attending physician, testified: "I saw Mrs. McAuley on the evening of the day before she died, and her leg was very much swollen and œdematous, dropsical, and purplish in color, and there was a slight abrasion on the surface, between the knee and foot, and she was absolutely unconscious and breathing heavily. I called the disease an erysipelas; erysipelas infection very frequently takes place through an abrasion. I did not go into the case at all; the woman was dying, and I simply administered a stimulant and went away; I did not make any attempt to determine whether or not there were other causes. The tissues of her body generally were apparently normal; they were white and pink; she was a very fleshy woman; the condition in the immediate vicinity of the abrasion was about the same from the foot to the trunk; the leg upon which the abrasion was was very much larger than the other leg. Her leg was very much swollen, and it was dropsical; there was a great deal of water in the tissues—serum

from the blood. In my opinion she had erysipelas; that is a germ disease, specific poisoning. It most frequently enters the system through an avenue of abrasion, through the surface; it frequently appears where there is no abrasion at all."

The foregoing is substantially all of the evidence in the case. The defendant offered no testimony, but interposed a motion for a nonsuit, which the court overruled. The motion was based upon the grounds that the plaintiff had failed to prove that Anna McAuley died from injuries received while riding in or upon the street-car, or that her death resulted, directly and independently of all other causes, from injuries sustained solely through external, violent and accidental means.

The jury returned a verdict for the plaintiff, and from a judgment entered upon such verdict, and an order denying a new trial, defendant appeals.

*Messrs. Kremer, Sanders & Kremer,* for Appellant.

The burden of proof rested upon plaintiff to show that deceased died from injuries which directly and independently of all other causes resulted in her death. (*National Mass. Accident Assn.* v. *Shryock,* 73 Fed. 774, 20 C. C. A. 3; *Barry* v. *United States M. A. Assn.,* 23 Fed. 712; affirmed in 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60; *Western Com. T. Assn.* v. *Smith,* 85 Fed. 401, 29 C. C. A. 223, 40 L. R. A. 653; *Bacon* v. *United States M. A. Assn.,* 123 N. Y. 304, 20 Am. St. Rep. 748, 25 N. E. 399, 9 L. R. A. 617; *Continental Casualty Co.* v. *Peltier,* 104 Va. 222, 51 S. E. 209; *Martin* v. *Equitable Accident Assn.,* 61 Hun, 467, 16 N. Y. Supp. 279.) The evidence fails to show that plaintiff made proof of death within two months from the time of the death of deceased, as required by the terms of the policy. (*Perry* v. *Caledonian Ins. Co.,* 103 App. Div. 113, 93 N. Y. Supp. 50; *Westchester Fire Ins. Co.* v. *Coverdale,* 9 Kan. App. 651, 58 Pac. 1029; *Hosley* v. *Black,* 28 N. Y. 438; *Bogardus* v. *New York etc. Ins. Co.,* 101 N. Y. 335, 4 N. E. 522; *Fox* v. *Davidson,* 36 App. Div. 159, 55 N. Y. Supp. 524; *Elting* v. *Dayton,* 17 N. Y. Supp. 849, 63 Hun, 929, affirmed in 144 N. Y. 644, 39

N. E. 493; *La Chicotte* v. *Richmond etc. Electric Co.,* 15 App. Div. 380, 44 N. Y. Supp. 75; *Clift* v. *Rodger,* 25 Hun, 39; *Armstrong* v. *Agricultural Ins. Co.,* 130 N. Y. 565, 29 N. E. 991; *Sullivan* v. *Spring Garden Ins. Co.,* 34 App. Div. 128, 54 N. Y. Supp. 629; *Weeks* v. *O'Brien,* 141 N. Y. 199, 36 N. E. 185; *Baxter* v. *Brooklyn L. Ins. Co.,* 44 Hun, 184; *Attorney General* v. *Continental Life Ins. Co.,* 93 N. Y. 73, 74; *Meech* v. *National Accident Soc.,* 50 App. Div. 144, 63 N. Y. Supp. 1008, 1011.)

The trial court erred in permitting the plaintiff to testify as to what his deceased wife stated to him after the purported accident to her. The question called for hearsay, and was incompetent; it was self-serving, and called for a mere narrative of a past transaction, and no part of the *res gestae.* (*Chicago etc. Ry. Co.* v. *Becker,* 128 Ill. 545, 15 Am. St. Rep. 144, 21 N. E. 524; *McKeigue* v. *City of Janesville,* 68 Wis. 50, 31 N. W. 298; *Vicksburg etc. R. R. Co.* v. *O'Brien,* 119 U. S. 99, 7 Sup. Ct. 118, 30 L. Ed. 299; *People* v. *Ah Lee,* 60 Cal. 85; *Mayes* v. *State,* 64 Miss. 329, 60 Am. St. Rep. 58, 1 South. 733; *Rulofson* v. *Billings,* 140 Cal. 452, 74 Pac. 35.)

*Messrs. Maury & Templeman,* for Respondent.

Citing, on the question of the proximate cause of the death of decedent, *Delaney* v. *Modern Accident Club,* 121 Iowa, 528, 97 N. W. 91, 63 L. R. A. 603; *Nax* v. *Travelers' Ins. Co.,* 130 Fed. 985; *Western Com. Trav. Assn.* v. *Smith,* 85 Fed. 401, 29 C. C. A. 223, 40 L. R. A. 653; *Modern Woodmen Accident Assn.* v. *Shryock,* 54 Neb. 250, 39 L. R. A. 826, 74 N. W. 607; 4 Current Law, 232; *Travelers' Ins. Co.* v. *Melick,* 65 Fed. 178, 12 C. C. A. 544, 27 L. R. A. 629. The affirmative proof of death was in the possession of the appellant and produced at respondent's request at the trial. When offered in evidence, no objection was made thereto as not having been made within time. No seasonable objection being made, the respondent, the court and the jury were led to believe either that the proof was made in time, or if not, the point was waived by the company. No technical

estoppel is required to constitute a waiver in his behalf. (*Trippe* v. *Provident Fund Soc.*, 140 N. Y. 23, 37 Am. St. Rep. 529, 35 N. E. 316, 22 L. R. A. 432; Thompson on Trials, sec. 693; see, also, 1 Cyc. 287; *Coburn* v. *Travelers' Ins. Co.*, 145 Mass. 226, 13 N. E. 604.)

MR. JUSTICE SMITH delivered the opinion of the court.

Appellant contends that the court below erred in allowing plaintiff to testify as to what his wife said about having been hurt in getting off the car, and also that the respondent failed to show that he had made proof of the death of his wife as provided by the terms of the contract of insurance. We do not find it necessary to decide these questions, however, because in our judgment there is a fundamental defect in the case presented by the plaintiff that prevents his recovery.

The motion for a nonsuit should have been sustained. The plaintiff failed to prove the cause of the death of his wife. His contract with the defendant provided that the company should become liable only in the event that injuries, effected solely through external, violent and accidental means, should, directly and independently of all other causes, result in loss of life. In order to recover the plaintiff was bound to prove that the death of his wife was caused by such an injury. This he failed to do. The only positive testimony produced by him was to the effect that the cause of the death of Mrs. McAuley was erysipelas. Whether the disease was introduced into her system through the scratch she received, or whether its baneful properties slumbered in her blood prior to that time, whether it was communicated to her body from her clothing or a bandage, or from some projecting portion of the car, we do not know, the doctors did not know, and the jury could not know. As actions like this are founded upon express contract, it is incumbent upon the plaintiff to prove, by some substantive testimony, that the event has occurred, upon the happening of which

defendant has agreed to become liable. Having failed in this regard, the plaintiff should have been nonsuited.

Several authorities are cited by the respondent to the effect that where death results from blood poisoning, following as a natural, but not the necessary, consequence of a wound, however slight, as from the prick of a pin or a lead pencil, the wound will, in insurance cases like the one at bar, be deemed the proximate cause of death. In this case, however, there was no testimony, not even a medical opinion, that the erysipelas was caused or aggravated by the wound on Mrs. McAuley's leg; that is to say, there is no testimony to the effect that the erysipelas germ was communicated to the deceased through the abrasion on her leg, nor is there any evidence that the abrasion caused the disease to become manifest. For aught we know the erysipelas was entirely independent of the abrasion, and the result would have been the same had no abrasion of the skin existed. The failure to call a physician until the patient was almost dead probably destroyed all chance of making this proof.

The judgment and order appealed from are reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.