WINNICOTT, APPELLANT, v. ORMAN ET AL., RESPONDENTS.

(No. 2,684.)

(Submitted June 16, 1909. Decided June 28, 1909.)

[102 Pac. 570.]

*Personal Injuries—Master and Servant—Burden of Proof—Evidence—Insufficiency—Nonsuit—New Trial Order—Opinions of District Court—Record on Appeal.*

New Trial Order—Opinion of District Court—Not Part of Record.
  1. Where a motion for a new trial, made on several of the statutory grounds, is sustained by an order general in its terms, the supreme court in its review is not restricted to a consideration of the reason for his action given by the judge in a memorandum opinion attached to the order; such opinion is not a part of the record on appeal; but if the order can be justified upon any of the grounds of the motion, it will be affirmed.

Personal Injuries—Evidence—Insufficiency—Nonsuit.
  2. In a personal injury action the burden is upon plaintiff to prove the negligence of defendant as alleged, and that such negligence was the proximate cause of his injury; hence if the conclusion to be reached from his testimony is equally consonant with the truth of his allegations and some other theory or theories inconsistent therewith, it becomes a mere conjecture and insufficient to establish his case, and nonsuit should be granted.

Same.
  3. The district court not only did not err in granting a new trial, but should have nonsuited plaintiff, in an action for damages to compensate him for personal injuries alleged to have been sustained by him, while employed by defendants as a laborer in railroad construction work, by reason of their failure to ascertain whether there was a "missed hole" after one of their blasting operations,—where the evidence introduced by him left it to conjecture whether the explo-

sion was caused by his picking into a "missed hole" or into a piece of dynamite left loose in the dirt, or into a cap, used to explode the charge, accidentally dropped by a workman the day before the accident.

Same—Contractors—Subcontractors—Liability—Evidence—Insufficiency.

4. In an action against a contractor and a subcontractor for injuries to a member of a railroad construction crew, evidence *held* insufficient to show that plaintiff was employed by the former.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

ACTION by William T. Winnicott against J. B. Orman and others. From a judgment and an order granting defendants a new trial, plaintiff appeals. Affirmed.

STATEMENT OF THE CASE BY THE JUSTICE DELIVERING THE OPINION.

Action by plaintiff for damages for a personal injury, alleged to have been suffered by him through the negligence of the defendants during his employment by them as a laborer in the construction of a railroad.

During the month of January, 1907, the defendants Orman & Crook, copartners, were engaged in construction work for the Chicago, Milwaukee & St. Paul Railway Company of Montana. At a point some miles south from the city of Butte there was a construction camp, known as "Moran's camp." Plaintiff had been at work at this camp from January 15 up to the 29th. It is alleged that the defendant Moran was employed by defendants Orman & Crook to supervise and oversee the work; that on January 29 the said Moran, acting by and through his boss or foreman, one Rumsey, had general control of the laborers employed at that point, including plaintiff; that, while acting within the scope of his employment, the said Rumsey ordered plaintiff and one Melton to loosen certain frozen ground, to be removed for the building of the roadbed, by picking it up with tools commonly known as pickaxes; that without plaintiff's knowledge the defendants had carelessly and negligently made the said ground unsafe and dangerous, by leaving in it what is known as a "missed hole." The complaint then proceeds: "That on the

twenty-eighth day of January, 1907, the boss then having general
supervision, control, and command of said laborers at the said
Moran's camp, while acting within the scope of his employment,
requested and commanded a certain number of said laborers,
plaintiff and the said Guy M. Melton not being among the said
number, to loosen the said frozen ground by drilling holes in it,
and placing in the said holes powerful explosives, commonly
known and designated as giant powder and dynamite and by
exploding the said explosives. That connected with the said ex-
plosives were fuse, a material which burns slowly, and thereby
permits persons to seek a safe distance before the explosion oc-
curs, which occurs when the fire reaches the explosive. That con-
nected with some of the explosives were what are commonly
known and designated as caps, a material which, when brought
into a sudden and forcible contact with some other hard object,
emits a little spark of fire which, when it comes into contact with
the giant powder or dynamite, causes an explosion.

"That on the said twenty-eighth day of January, 1907, the said
certain number of laborers at Moran's camp had been requested
and commanded to loosen the said frozen ground by means of the
said explosions. That because of a defective fuse, or because of
some fact not known to the plaintiff, the fire never reached the
explosive in the said missed hole, or because of the fact that the
said explosive was damp and frozen, the said explosion did not
occur, or was not complete, and the said explosive remained in
the said missed hole during the night of the twenty-eighth day
of January, 1907, until the twenty-ninth day of January, 1907,
and until plaintiff and the said Guy M. Melton were requested
and commanded by the said walking boss to pick loose the said
frozen ground in which was the said missed hole, and that neither
the plaintiff nor the said Guy M. Melton knew, or had reason to
know, of the presence of the said missed hole, but that the de-
fendants had knowledge of the presence of the said missed hole
in the said frozen ground, or in the exercise of ordinary care and
diligence would have had knowledge thereof, because of the fact
that the said boss having general supervision and control and
command of the said laborers at the said Moran's camp on the

said twenty-eighth day of January, 1907, had knowledge thereof, or in the use of ordinary care and diligence would have had knowledge thereof.

"That without negligence on the part of the plaintiff, and while plaintiff was exercising due and diligent care, and through the negligence of the defendants, while the plaintiff and the said Guy M. Melton, at the request and command of the defendants, were in the act of picking loose the said frozen ground, either the pickax that plaintiff was using, or the one that the said Guy M. Melton was using, came into sudden and forcible contact with the explosives in the said missed hole, or with a cap connected with the said explosives, thereby causing an explosion, which said explosion caused certain parts of the said explosive, among which were burning powder, glycerin, and other burning material, to be thrown and hurled into the eyes and face and at the body of the plaintiff, causing him to become permanently blind; destroying his eyes; to be disfigured for life; to suffer great pain and agony of mind; causing his shoulders to be bruised and bruising his left lower limb; and causing him to become permanently disabled," etc.

The separate answer of defendant Moran alleges that at the time stated in the complaint he was engaged in construction work under a subcontract with Orman & Crook; that plaintiff was employed by him; that when the plaintiff entered such employment he knew that it was of such character as to require the use of explosives, and that he therefore assumed the risk incident to that character of work. He denies generally all the allegations of the complaint which are not admitted by this paragraph.

The defendants Orman & Crook, admitting that they were copartners as alleged, deny all the other allegations of the complaint. It is alleged that prior to the time the plaintiff was injured they had obtained, from a firm known as McIntosh Bros., a subcontract to do construction work; that they had in turn sublet a portion of the work covered by this contract to defendant Moran; that they had no control or supervision of the work being done by him, their only power in that behalf being to ac-

cept or reject it when completed; and that plaintiff was never at any time in their employ. Upon these allegations there was issue by reply.

At the conclusion of plaintiff's evidence the defendants interposed separate motions for nonsuit. These having been overruled, and the defendants declining to introduce any evidence, the jury returned a verdict for plaintiff. Thereafter an order was entered granting defendants a new trial. Plaintiff has appealed.

*Mr. N. A. Rotering,* and *Mr. S. T. Hogevoll,* for Appellant.

*Mr. W. E. Carroll,* for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The motion for new trial was made on several of the statutory grounds, including insufficiency of the evidence to justify the verdict. The court sustained it by a general order, but attached to the order a memorandum stating, as its reason for granting the motion, that the evidence is insufficient, in that it "leaves it speculative and conjectural whether the explosion by which plaintiff was injured was due to a missed hole, for which defendants might be liable, or due to a piece of dynamite accidentally in the loose earth, and for which defendants are not liable." Contention is made by counsel for appellant that this court may consider this reason alone; and, if the court was in error in granting the motion, the order must be reversed, without regard to whether the evidence is insufficient in other particulars, or whether there were errors of law requiring the granting of a new trial. In *Menard* v. *Montana Central Ry. Co.,* 22 Mont. 340, 56 Pac. 592, the same contention was overruled by this court. The rule declared therein has been uniformly observed by this court. (*State* v. *Schnepel,* 23 Mont. 523, 59 Pac. 927; *Gillies* v. *Clarke Fork Coal Min. Co.,* 32 Mont. 320, 80 Pac. 370; *Fournier* v. *Coudert,* 34 Mont. 484, 87 Pac. 455; *Case* v. *Kramer,* 34 Mont. 142, 85 Pac. 878; *Wright* v. *Mathews,* 28 Mont. 442, 72 Pac. 820;

*Beach* v. *Spokane R. & W. Co.*, 25 Mont. 367, 65 Pac. 106.) As was stated in *Menard* v. *Montana Central Ry. Co.*, *supra*, the memorandum opinion of the trial judge is no part of the record. It may not, therefore, be looked to for the purpose of limiting the scope of the general order, or restricting the review of it by this court. The order is before us for review generally, upon the record presented to the district court; and, if it can be justified upon any of the grounds of the motion, it must be affirmed.

Under the allegations of his complaint, and the issues made thereon by the defendants' answers, it was incumbent upon plaintiff, in order to recover against the defendants Orman & Crook, to show that he was in their employ, and that the injury suffered by him was the result of a violation of their legal duty to use ordinary care to furnish him a reasonably safe place in which to work, or, what is the same thing, of their sending him to work in the frozen ground without having first exercised ordinary care to ascertain that there was no missed hole therein into which he might drive his pick and cause an explosion; for the negligence alleged is that these defendants knew of the missed hole, or by the use of ordinary care should have known of it, and with such knowledge put plaintiff to work where, in his ignorance of its existence, he was likely to pick into it and cause an explosion, to his injury. The theory upon which Moran is joined with them as defendant is that, he being in their employ, and Rumsey, his boss, having under his immediate direction and control the other employees, Moran is liable, together with his co-defendants, for any negligence toward the employees of which Rumsey was guilty. As to whether he, being the intermediate agent only, and not being charged personally with any omission of duty or primary negligence, is liable under the rule of *respondeat superior;* we express no opinion, since no reference is made to this feature of the case by counsel. In no event can he be held liable with Orman & Crook, except upon proof of the same facts necessary to fasten liability upon them. If he was not in their employ, he was solely responsible for the acts and omissions of Rumsey, and is liable for any injury caused by him to the plaintiff by reason of the negligence alleged.

Without considering any other ground of the motion, we think a new trial should have been granted on the ground that the evidence is insufficient to sustain the verdict, not only in the respect stated by the trial judge, but also in another essentially important particular. The plaintiff and his wife were the only witnesses who testified. The latter merely corroborated the plaintiff in his statement of the details of a conversation had by him with defendant Orman some time after the accident occurred.

As to how the accident occurred, and the cause of it, and the particulars showing by whom he was employed, the plaintiff testified as follows: "As to what Rumsey said when he put me to work there, he said the day before the holes had been drilled and blasted, loaded for powder or dynamite, and that it had been shot off. He expected that the ground was all broken up, ready for us to pick it up and shovel it out. Guy Melton was the man who was working with me. Before I went to work there, I asked Paul Rumsey if it was safe to go to work there, and Melton asked him if all the holes had been shot off there, and Rumsey said they had. Rumsey said they told him that six sticks had been put in the holes, and he said they were all exploded. Myself and the man working with me then proceeded to work, and we worked at that place seven or eight hours before anything happened; and we worked the entire forenoon without any accident occurring from the time we started, and in the afternoon I picked out a missed hole. This happened about 5 o'clock in the afternoon, and I was still working on that foundation, and we had removed between two and three feet, nearly three feet, perhaps a little more, from that particular place, and I was picking and digging it up, and picked into a missed hole. A missed hole is a hole that has not been shot off, and that is loaded with explosives. In the course of my employment about railroad grading camps I had not handled dynamite to any great extent, but I had handled some of it, and I know that it was dangerous. I had seen a little powder used in and around railroad camps, and I knew that powder was being used in this place on this culvert. This culvert was twenty-five feet long and eight feet wide; this hole that I was digging in, something of that size, and I had dug

about three feet off of the surface, between two and three feet. We started about 9 o'clock or a quarter to 9 in the morning, and we worked until about 5 o'clock in the afternoon when this accident occurred. * * * I did not see powder put into these holes. It was dynamite that they were using there, I believe. Rumsey said it was. He told me that the same morning I started to work. Previous to the 28th I had been working about a mile or so farther down the grade, digging and shoveling on the bank, and I asked Rumsey about this particular powder, because he was talking about it himself to the bunch of men. He said that he had sent two men out there to drill these holes and load them, to break the ground up so that it would be easy to dig and throw out, and one of them spoke out and said—one of them men who had been working there—how much they had used, and said there were six sticks or six pieces of dynamite put in each hole. There were nine holes loaded to break up this ground, and he said it was shot off the night before we went to work. He told us it had been shot off, and I asked him if it was all ready to go to work, and he said yes, and he said all the holes had exploded the night before; Rumsey said that himself. Rumsey knew that because the men go into camp in the evening and report; the men who he sets to load these holes and do this work. * * * I do not know whether anybody made any report the evening before to Paul Rumsey. I was picking and Melton was shoveling at the time, and that is the way I came to the conclusion that it was my pick that did the work. This hole or this dynamite, or whatever I struck, was a distance of three or four feet below the surface, as we originally started there; about that. I do not know of my own knowledge who put that dynamite there. I believe from the walking boss that it was dynamite. That is the only means I have of knowing of these matters; through the walking boss, or what he said to me. I was working for Moran and Orman & Crook. I was hired by those people shortly after the 15th of January, 1907.'' In detailing the conversation with Orman he said: ''He told me he was sorry that my accident occurred on his contract, and that he would do all that he could do toward helping me get something on the road. He meant by

that a collection of money from the employees on the road.
*   *   * He did not say anything that implied to me, or stated
to me, that he was liable for anything at all.  *  *  * He
spoke something about not being responsible in this matter, or
his firm responsible, for the reason that I was engaged and em-
ployed by John Moran." On cross-examination he said: "Or-
man & Crook did not hire me, and John Moran never hired me.
*   *   * I have said that Orman & Crook did not employ me.
nor did John Moran employ me." And again: "When Rumsey
hired me, he did not tell me whether he was hiring me for Orman
& Crook or Moran. I know who I was working for—I was work-
ing for Moran, and Rumsey hired me—hired me for Moran to
work on Orman & Crook's contract on the railroad construction.
*   *   * Orman & Crook paid me. John Moran gave me a time
check that I took to Orman & Crook and had it cashed. I was
paid after I was in the hospital. My pay was brought to the
office—brought to Orman & Crook's office, and I got Orman &
Crook's check cashed, and the money was brought to me. I did
not see the check because I was already blind. That check was
never in my possession, but I have had other checks from Orman
& Crook in my hands before I worked for Moran. I did not see
the check with which Orman & Crook paid me, between January
15 and January 29. I don't think it was ever put into my hands,
but the money itself was brought to me by my wife. Men work-
ing upon these various subcontracts put their time checks to Or-
man & Crook, who gave them another check; that only showed
the time you worked. I don't know who signed that time check
at Moran's camp. It was not Paul Rumsey. He was not the man
who kept the time. It was not John Moran. Orman & Crook
charged the money up to John Moran. It is a fact, and I so
understood it at the time, that John Moran was merely a sub-
contractor there under Orman & Crook. That was the way I
understood it, and that Orman & Crook had the larger contract
for a great number of miles of railroad, which they had sublet
to John Moran and others for construction; and I worked at
Moran's camp No. 2. I understood that Paul Rumsey was the
man who hired me. He was the walking boss, and John Moran

was the contractor looking after that particular portion of the work.''

This evidence reveals the fact that the plaintiff did not know whether the explosion was caused, as he alleges, by his picking into a missed hole, or into a piece of dynamite which had failed to explode, and had thus been left in the loose earth, or had gotten into it by accident, or into a cap which had been dropped by the workmen on the day before. While he repeats the statement that he picked into a missed hole, his subsequent statement indicates that this amounts to a mere inference by him that there was a missed hole from the fact that there was an explosion, produced by a stroke of Melton's shovel, or his own pick, into some explosive after they had removed the dirt to a depth of three or four feet. There is no attending circumstance testified to tending to show that one of the charges placed the day before did not in fact explode, and to exclude an inference that the explosive, whatever it was, got into the loose earth by accident, oversight, or design, for which no one of the defendants was responsible. If it was a cap or a piece of powder dropped by one of the workmen, or a portion of a stick which had failed to explode, but was blown off and mixed with the loose earth, the accident was an unforeseen misfortune, for which no one can be held responsible, unless it was the legal duty of defendants to make inspection after each explosion to ascertain that all the powder placed in the holes had been consumed, and none of it blown out and mixed with the debris. Even so, recovery is sought here for the lapse of duty in failing to ascertain that there was a missed hole. It may be conceded that where the testimony introduced by the plaintiff, though mainly circumstantial, tends directly to support the plaintiff's case, and to exclude any inference that some other cause produced the injury, and there is no rebutting evidence, it would be an abuse of discretion to grant a new trial, yet, if the evidence does not meet this requirement, it fails to make out a *prima facie* case, and it becomes the duty of the court to grant a new trial, just as it should have sustained the motion for nonsuit in the first instance.

The rule applicable is stated thus in *Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515: "The burden of proof is upon plaintiff, and is not satisfied if the conclusion to be reached from the testimony offered is merely a matter of conjecture. If such conclusion be equally consonant with the truth of the allegations, and with some other theory, or theories, inconsistent therewith, it becomes a mere conjecture, and the rule of the burden of proof is not satisfied. Thus in an ordinary case of negligence, like the one under consideration, plaintiff has the burden of proving the negligence of defendant as alleged, and also that such negligence was the proximate cause of plaintiff's injury. If the testimony leaves either the existence of negligence of defendant, or that such negligence was the proximate cause of the injury, in conjecture, it is insufficient to establish plaintiff's case. If the conclusion to be reached from the testimony is equally consonant with some theory inconsistent with either of the issues to be proven, it does not tend to prove them within the meaning of the rule above announced. The use of the word 'tend' does not contemplate conjecture. It contemplates that the testimony has a tendency to prove the allegations of the complaint, and not some other theory inconsistent therewith." It has been approved by this court in the following cases: *Olsen* v. *Montana Ore Pur. Co.,* 35 Mont. 400, 89 Pac. 731; *McGowan* v. *Nelson,* 36 Mont. 67, 92 Pac. 40; *McAuley* v. *Casualty Co.,* 37 Mont. 256, 96 Pac. 131; *Monson* v. *La France Copper Co.,* 39 Mont. 50, 101 Pac. 243.

The motion for nonsuit should have been granted, for the reason that the evidence furnishes no substantial basis for the conclusion that the defendants were guilty of negligence. For the same reason a new trial was properly granted. It should have been granted also for the reason that the evidence wholly fails to sustain the allegation that the plaintiff was in the employ of Orman & Crook. So far as the statements of plaintiff tend to show any substantial fact in this connection, they lead to the conclusion that he was in the employ of Moran, who was an independent contractor, and not of Orman & Crook. If Moran was an independent contractor, and the plaintiff was in his em-

ploy, Orman & Crook cannot be held liable. Again, Moran cannot be held liable in this case, because it is not alleged that the plaintiff was employed by him.

The order is affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.