DALBEY, Respondent, v. EQUITABLE LIFE ASSURANCE
SOCIETY OF THE UNITED STATES, Appellant.

(No. 7,735.)

(Submitted November 18, 1937.   Decided December 11, 1937.)

[74 Pac. (2d) 432.]

Mr. *J. A. Poore*, for Appellant, submitted a brief, and argued the cause orally.

*Mr. Oscar O. Mueller,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an action on an insurance policy issued by the defendant company, respondent here. By the terms of the policy plaintiff, mother of George K. Dalbey, deceased, was named beneficiary to receive $2,000 in case of the death of the insured, with the beneficial amount to be increased to $4,000 on receipt of proof of death from accident, in accordance with the following definition contained in the policy: "Death from accident means death resulting solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means." The paragraph then provided for the noninclusion of certain designated risks, but did not provide for the exclusion of a fireman from the protection of the policy. Deceased, a fireman, was therefore covered and protected by the policy in accordance with the terms thereof.

The cause was tried to the court, a jury having been expressly waived. The primary liability on the policy, $2,000, was paid upon proof of death furnished, leaving for controversy only the matter of the additional $2,000, which was payable only in the event of accidental death. The court found that deceased had died as a result of accidental means resulting solely from bodily injuries caused directly, exclusively, and independently of all other causes, by external violence and purely accidental means as stipulated in the policy, and concluded, as a matter of law, that the plaintiff was entitled to a judgment for the additional $2,000. The appeal is from that judgment.

The sole question presented by the assignments of error is whether the evidence is sufficient to support the finding that the cause of insured's death was such as to bring it within the double indemnity provision of the insurance contract. Solution of the question naturally depends upon a consideration of the evidence in the light of the term "death from accident," as defined in the policy.

It is the position of defendant that the death, though accidental, was not caused directly, exclusively, and independently

of all other causes, by external, violent, and purely accidental means. It also denies that any such proof of death has been furnished. Plaintiff's position is to the direct contrary.

The very nature of such a contract of accident insurance makes it necessary to consider the facts of each particular case to determine whether the death of an insured is one for which the insurance company has agreed to pay increased indemnity. The judicial variability on the question of accidental means causing the lack of uniformity in the interpretation of such policies has arisen largely from the dissimilarity of facts involved. (*Mehaffey* v. *Provident Life & Acc. Ins. Co.*, 205 N. C. 701, 172 S. E. 331.)

The only evidence adduced relative to the circumstances of the death of the insured here was the testimony of two witnesses, the fire chief in charge of the department fighting the fire, and the doctor who attended deceased immediately after his collapse. Both witnesses were produced by the plaintiff. Defendant introduced no evidence. Their testimony disclosed that deceased was apparently an exceptionally strong and healthy young man; that he was a regularly paid member of the city fire department; that he died in service from acute pulmonary edema, caused by the inhalation of smoke and gas fumes. The testimony of the fire chief further disclosed that the fire was that of a large barn having a wooden interior and covered on the outside with corrugated iron; that there were about twenty tons of oat hay and a few head of livestock in the barn, which was located just outside the city limits of Lewistown and under a hill. The nearest water hydrant to the barn was approximately 300 feet away, and it was impossible to get near the barn from the hydrant with a fire truck. This fact necessitated the laying of two lines of hose by hand from the hydrant down the hill to the barn. Deceased assisted in the unreeling and laying of the hose, which work was usually done with the truck. Continuing, the fire chief testified: "It was a very unusual fire, because of the fact that it was situated right under a hill. The smoke was so intense at times we had to move our position several times in order to stay where we could throw

water on the fire. There were several head of livestock burned in the barn, a horse and four head of calves, and that stench and smoke made it unbearable at times, and made it necessary to shift positions from one place to another in order to stay anywhere near the barn.''

Further testifying with reference to smoke conditions and types of smoke, the witness said: ''Sometimes it will be a light smoke that will hit the atmosphere and lift and drift off, and sometimes you have heavy smokes. I don't known what the technical term would be, but they hang close to the ground. That is the particular type of fire we really have trouble with trying to stay close to, and that was the particular type of fire in this case that Dalbey was fighting. The smoke was very dense and hung to the ground and the hillside. Whether it was the contour of the ground, or whether it was just the condition of that particular kind of smoke, I can't say; but I do know that particular smoke was very intense and very irritating, and as fast as men would come out of the smoke they would be coughing and doing a lot of spitting. Some smoke does not affect us that way.''

It appears that deceased's asphyxiation did not manifest itself while he was actually engaged in shooting water into the blaze, but that it came about while shifting the position of the hose from the north to the south side of the barn to protect other buildings from burning. To make this change it was necessary to climb a six-foot fence. Deceased reached the top but, as he did so, he fell back unconscious. He did not recover from this and died some hours later.

The testimony of the attending physician showed that deceased died from acute pulmonary edema, which condition was brought about by the inhalation of smoke and fumes. He was asked the following question: ''You heard the testimony in regard to his [deceased's] collapse when he started to get over the fence. Would that indicate the condition he was in at that time, Doctor? Answer: I don't think that has anything particular to do with it. Patients who collapse from inhalation of

smoke usually collapse very quickly. They may have a few premonitory symptoms to which they may not attach very much importance. A person may inhale a small amount of monoxide gas, and the symptoms appear to be rather mild for a moment or two, and suddenly they don't recall what happened after that.''

Similar indemnity provisions have been the subject of much litigation in different jurisdictions, with the result that the decisions rendered have not been entirely uniform on the subject. A case illustrating the one extreme is that of *Equitable Life Assur. Soc. of United States* v. *Hemenover,* 100 Colo. 231, 67 Pac. (2d) 80, 110 A. L. R. 1270, a case subscribing to the rule that no distinction exists between accidental results and accidental means. On the other hand, illustrating an opposite result, is the case of *Mehaffey* v. *Provident Life & Acc. Ins. Co.,* supra, wherein that court announced that, in the absence of a showing that poison had been taken by mistake or inadvertence, the death was not the result of accidental means within the terms of the policy.

The litigated cases on the subject have been comparatively few in this jurisdiction. The only case bearing immediately on the question is that of *Tuttle* v. *Pacific Mut. Life Ins. Co.,* 58 Mont. 121, 190 Pac. 993, 997, 16 A. L. R. 601. In that case the policy contained a similar provision with respect to accidental means. In reversing the judgment, one of the grounds for doing so was that there was no evidence to support the court's finding that death had come to the deceased by external, violent, and accidental means within the terms of the policy. The opinion gave recognition to the rule that in order to recover on such an accident policy, something more than the fact of resulting death to the insured was necessary to establish a case of death by accidental means. It subscribed to the rule that, ''where, in the act which precedes an injury, something unforeseen or unusual occurs which produced the injury, the injury results through accident.'' (Compare, also, *McAuley* v. *Casualty Co.,* 37 Mont. 256, 96 Pac. 131, and the same case reported in 39 Mont. 185, 102 Pac. 586.)

As was clearly pointed out in the *Tuttle Case*, supra: "The burden of proof was upon the plaintiff to show, not only the death of the insured, but also that the death was caused by injuries sustained by the insured by external, violent, and accidental means, and resulted within 90 days after the injury. In other words, the plaintiff must not only show death, but death resulting from accident within the meaning of the policy." That burden likewise devolved upon the plaintiff here, and the question for our solution is whether she has carried the burden within the terms of the policy.

It is not necessary to the solution of this question to discuss extensively the terms "external" and "violent," as qualifying the word "accidental" in the quoted portion of the policy, because counsel for defendant company has devoted his brief and argument to a consideration of the term "accidental means." Generally, on the point of death resulting from asphyxiation as constituting external and violent means, however, see 5 Couch's Cyclopedia of Insurance Law, section 1150, and 6 Cooley's Briefs on Insurance, page 5254. We do not here assume to say that the terms "gas" and "smoke" are synonymous, or even analogous, except that both seem to be the same in so far as they are considered external and violent in their nature in relation to accident insurance cases.

Resort to the evidence and a search for a similar factual situation in the authorities have brought to our attention the recent Oregon case of *Stuart* v. *Occidental Life Ins. Co.*, 156 Or. 522, 68 Pac. (2d) 1037, 1042. The deceased in that case was, as here, a strong, healthy young man twenty-six years of age, and a member of the volunteer fire department of the city of Enterprise, Oregon. The evidence showed that "the insured while engaged in his duties as a fireman fighting fire, was caught by a falling ceiling so that he was enveloped in smoke, soot, and burning materials, and he was forced to inhale the smoke, soot, and flames to such an extent and in such a manner that he was internally and externally injured, and that his death was the direct result of these injuries. The testimony as to his being caught by the falling ceiling and being enveloped in smoke, soot,

and burning débris was direct and positive. \* \* \* The evidence of the doctors further shows that the death of deceased was a direct result of the injuries which he sustained at that time.'' All testified that the inhalation of smoke while fighting the fire brought about the death. In holding for the beneficiary in that case, the court did so on the theory that, under an accident policy containing such provision, the liability had to be determined by causes rather than consequences. The language of the court is as follows: ''In the present case there can be no question that the act which preceded the injury was something unforeseen, unexpected, and unusual, which produced the injury and the injury resulted through accidental means.'' This pronouncement is in accord with the principles enunciated in the *Tuttle Case*, supra.

The question, then, is whether the facts of this case are sufficient to sustain the finding of the trial judge, the trier of the facts, who expressly found that the death occurred as a result of accidental means. Does the evidence support that finding?

In the process of evaluating the testimony, of weighing the evidence, to determine the question of its sufficiency, with the ultimate purpose of deciding whether the evidence sustains the finding of the trial court, it is important to have in mind a few fundamental principles, and to give them effect in the consideration of the question. These principles are:

(1) That a policy of insurance is to be liberally construed in favor of insured, and strictly construed against the insurer. (*De Vore* v. *Mutual Life Ins. Co.*, 103 Mont. 599, 610, 64 Pac. (2d) 1071.)

(2) That this court indulges the presumption that the judgment of the district court is correct and will be upheld unless clearly shown to be erroneous, the burden of showing which rests upon the appellant. (*Heberson* v. *Great Falls Wood & Coal Co.*, 83 Mont. 527, 533, 273 Pac. 294.)

(3) That the finding of the trial court will not be disturbed or reversed if the evidence, fully considered, furnishes reasonable grounds for different conclusions. (*Conner* v. *Helvik, ante,* p. 437, 73 Pac. (2d) 541 and cases therein cited.)

(4) That the solution of any issue may rest in whole or in part upon circumstantial evidence. (*Hier* v. *Farmers Mut. Fire Ins. Co.*, 104 Mont. 471, 67 Pac. (2d) 831, 110 A. L. R. 1051.)

It must be understood that the policy insured against ''death by accident.'' While it contained a definition as to just what the term means, viz.: ''bodily injuries caused directly and independently of all other causes, by external, violent and purely accidental means,'' it is obvious that the definition did not alter the requirement that the death must be accidental. The term ''accidental means'' does not add to nor detract anything from that requirement. It is rather repetitious or explanatory. It really constitutes an endeavor to emphasize the fact that the element of accident must be the proximate cause of the death, as distinguished from something not accidental.

The new work, 1 C. J. S., page 425 et seq., contains a very full, complete, and comprehensive discussion of the words ''accident'' and ''accidental'' and their meaning. It is there said that neither word has a technical, legal meaning, but must be considered in the light of the common and accepted meaning, and construed according to common speech and usage—that the common understanding contemplates something unanticipated, unforeseen, and unusual, without design, intention, or premeditation. With these principles in mind, we must consider the facts and circumstances of the case.

Here the evidence discloses without contradiction that the conditions of the fire were unusual, due to the location of the barn and the construction thereof—the exterior parts being covered with corrugated iron, a noninflammable material which may have confined the smoke and gas for a time so that they might have burst forth in unusually destructive quantities—the heavy smoke, perhaps also caused by the fact that a large quantity of hay and some livestock were burning along with all of the inflammable portions of the barn. The fire chief testified that the extraordinarily dense and suffocating smoke made the conditions so unbearable at times that it was impossible to remain near enough to the fire to fight it effectively. The site of the

fire was just outside of the city of Lewistown. It was a rural fire, such as the fire department was rarely called upon to combat, necessitating the unreeling and laying of hose by hand—a fact to be considered, since it called for extra exertion on the part of deceased.

It is true that the evidence does not disclose any such definite physical accidents or occurrences as those described in the case of *Stuart* v. *Occidental Life Ins. Co.,* supra, which accidents were there held to have been the accidental means furnishing the proximate cause of deceased's inhaling too much harmful smoke and gas fumes; however, deceased was here indisputably overcome by similar smoke and fumes the effects of which proximately caused his death. The facts and circumstances of this fire, although not furnishing as specific an example of something accidental, unusual, unforeseen, and proximate to deceased's death, nevertheless do furnish evidence from which reasonable men, or the trier of the facts, might draw different conclusions.

Fighting fires was in the day's work of the insured. Certainly his beneficiary cannot be compensated unless something of an unforeseen or unexpected nature occurred contrary to the usual course of things. It is true that there is, as the court quoted in the case of *Stuart* v. *Occidental Life Ins. Co.,* supra, "a great distinction between a voluntary act and a voluntary exposure to danger. Hidden danger must exist; yet the exposure thereto without the knowledge of the danger does not constitute a voluntary exposure to it. The approach to an unknown and unexpected danger does not make the act a voluntary exposure thereto. * * * The act may be voluntary, yet the exposure involuntary. The danger being unknown, the injury is accidental."

There is nothing here to indicate that deceased had any knowledge of the unusual and exceptionally dangerous conditions to which he was subjected, and which were described by the fire chief as existing at the time. The matter, then, resolves itself into the question whether the facts, detailed by the witnesses, when taken with all of the circumstances surrounding the case,

were sufficient to justify the trial court in the finding with relation to the cause of the death. It is our opinion that the facts and circumstances do disclose that something out of the ordinary in the nature of an accident did occur. It is true that deceased was handling and attempting to combat a dangerous and destructive instrumentality. We think it is likewise apparent that something out of the ordinary did occur, otherwise it was not to be expected that a healthy, rugged young man, in the prime of life, would be overcome in the manner described by the witnesses. It is impossible for us to say that there was no evidence adduced in support of the finding of the court.

The judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES ANDERSON, MORRIS and ANGSTMAN concur.