HAVRE IRRIGATION CO., A CORP., PLAINTIFF AND RESPOND-
ENT *v*. GEORGE H. MAJERUS, ET AL., DEFENDANTS AND
APPELLANTS.

No. 9517.

Submitted September 19, 1957. Decided December 5, 1957.

318 Pac. (2d) 1076.

Messrs. Hoffman & Cure, Great Falls, for appellants.

Messrs. Kuhr & Weber, Havre, Messrs. Burns & Thomas, Chinook, for respondent.

Mr. Harvey B. Hoffman, Mr. Fred J. Weber and Mr. Harry L. Burns argued orally.

MR. CHIEF JUSTICE HARRISON:

This is an appeal from a decree in favor of the plaintiff and against the defendants rendered by the District Court of the Twelfth Judicial District of the State of Montana, in and for the County of Hill.

The case involves the priority of water rights on Beaver Creek, a stream rising in the Bear Paw Mountains in Hill County, Montana.

All of the water rights which plaintiff claims were appropri-

ated and acquired by 1904. The construction of a diversion dam in Beaver Creek and of a main canal to carry the water to the lands to be irrigated was commenced by its stockholders in 1902 and completed in 1903 with approximately the same capacity and the same location as now. The canal is about five miles long and runs into a storage reservoir known as the Sands Reservoir.

Its stockholders have been using the water continuously since the system was constructed for the purpose of irrigating their lands. Only stockholders may use the water, and among themselves they divide it on a time use basis, in accordance with their respective shares of stock.

A civil engineer, in 1951, made a survey of plaintiff's irrigation works, including the diversion dam, canal, storage reservoir and irrigated lands, and also of the lands being irrigated upstream from plaintiff's dam. On June 11, 1952, when the water was at the top of the dam, he measured the capacity of the headgate in plaintiff's canal, and found it to be 59.62 cubic feet of water per second. The canal would actually hold more than that, but the plaintiff concedes that its water rights are limited to the capacity of the headgate.

After the survey had been completed, the plaintiff instituted this action in 1953 for the purpose of establishing its prior right to 60 cubic feet per second of the waters of Beaver Creek and to enjoin defendants from interfering therewith.

Each of the defendants in their separate answers claim they own a prior right to 2 cubic feet of water from Beaver Creek, all of their claims being based upon adverse use thereof for the prescriptive period of ten years.

At the trial of the action, almost all of the witnesses were in agreement on certain facts pertaining to Beaver Creek water. It was unanimously agreed that Beaver Creek did not run full capacity all year; that the greatest runoff occurred in the months of April, May and early June. Defendants testified they obtained their water during those months, that is, when the greatest runoff occurred. Plaintiffs testified they never

experienced any shortage of water during these months until the year 1949, a year of subnormal rainfall.

All defendants except two, M. R. Crowe and his brother Leonard, base their claims on prescriptive periods running since 1941. M. R. Crowe and Leonard Crowe base their rights on periods running since 1935; however they testified that together they only irrigated twenty acres.

It was established at the trial that the defendants' lands were composed of sandy soil, and they stated on cross-examination that they thought most of the water placed on their lands for irrigation would eventually percolate through the soil and return to its source, Beaver Creek. An expert witness for defendants estimated the return to be at least thirty percent.

Officers and stockholders of the plaintiff corporation testified that ever since the irrigation project had been initiated they had experienced shortages after the month of June and sometimes as early as the middle of that month. They also stated they had not known of any upstream irrigation from Beaver Creek until 1947, when by rumor they heard that certain of the defendants had been irrigating from the creek. In 1949, because of the shortage, they employed the services of the civil engineer, referred to previously, to determine the reason for the shortage. The report of that investigation resulted in this action.

All defendants averred they had used the water from Beaver Creek openly, notoriously, continuously, under claim of right for the prescriptive period. However it was shown at trial that the majority of their irrigated lands lie close to the creek and a substantial distance from the main road, thus making discovery of their irrigation difficult by passers-by traveling on the road.

The case was submitted to the court which made findings of fact and conclusions of law generally for the plaintiffs, and in particular finding that they had prior right to 59.62 cubic feet of water from Beaver Creek. This right was decreed to have stemmed from the appropriation of Beaver Creek water

in December of 1901. The court decreed that defendants had a subsequent, inferior right to the following amounts of water:

George H. Majerus, and his wife, Leonard G. Majerus and his wife, 2 cubic feet per second of the annual flow of the waters of Beaver Creek since 1941; Walter Neuwerth had ½ cubic feet per second commencing in 1941; M. R. Crowe and wife, and L. R. Crowe, 2 cubic feet per second commencing with 1935; and Marvin H. Beck and his wife, 2 cubic feet commencing with 1943.

The defendants appealed from the decree of the trial court on three specifications of error: (1) That the court erred in finding that plaintiff had no notice of the defendants' use of waters from Beaver Creek until 1947; (2) That the court erred in finding that defendants' use of the water did not affect plaintiff's rights or take from it water to which it was entitled until the year 1949; (3) That the court erred in finding the rights of plaintiff were prior to any rights of the defendants, or either of them.

Although this is an equity case and this court is bound to review all questions of law and fact raised on appeal, R.C.M. 1947, section 93-216, nevertheless we are guided in our review by certain presumptions and rules of law. First, in entering upon a review of the evidence on appeal, this court indulges the presumption that the judgment of the trial court is correct, and will draw every legitimate inference therefrom to support the presumption. Thomas v. Ball, 66 Mont. 161, 213 Pac. 597. Second, it is the trial court's office to resolve inconsistencies in the testimony, and where the evidence, fully considered, furnishes reasonable grounds for different conclusions the findings of the trial court will not be disturbed. Dalbey v. Equitable Life Assur. Soc. of United States, 105 Mont. 587, 74 Pac. (2d) 432; Orton v. Bender, 43 Mont, 263, 115 Pac. 406.

It has been repeatedly established in this state that one claiming water rights, by virtue of adverse possession, has the burden of proving every element of his claim. Galiger v. Mc-Nulty, 80 Mont. 339, 358, 260 Pac. 401; Boehler v. Boyer, 72

Mont. 472, 234 Pac. 1086; Smith v. Duff, 39 Mont. 374, 102 Pac. 981, 133 Am. St. Rep. 582.

"It is equally well settled that in order to acquire a water right by adverse user or prescription, it is essential that the proof must show that the use has been (a) continuous for the statutory period which in this state is ten years (sec. 9024, Rev. Codes [1921, now R.C.M. 1947, section 93-2513]); (b) exclusive (uninterrupted, peaceable); (c) open (notorious); (d) under claim of right (color of title); (e) hostile and an invasion of another's rights which he has a chance to prevent." Irion v. Hyde, 107 Mont. 84, 81 Pac. (2d) 353, 355; in accord Lamping v. Diehl, 126 Mont. 193, 203, 246 Pac. (2d) 230.

Assuming arguendo, defendants have established the first four elements, have they established the fifth element, that of hostility or adverse user, which is basically the fundamental issue in this case? We think not.

To establish adverse user in Montana, case law has, although not in this precise manner, set down three prerequisites: (1) That the claimant used water at a time when plaintiff had need of it; (2) That he used it in such a substantial manner as to notify plaintiff that it was being deprived of water to which it was entitled; and (3) That during all of that period, plaintiff could have maintained an action against him for so using the water. See in this regard, Boehler v. Boyer, supra 72 Mont. at page 476, 234 Pac. at page 1087; Smith v. Duff, supra 39 Mont. at page 378, 102 Pac. at page 982; Galiger v. McNulty, supra 80 Mont. at page 358, 260 Pac. at page 406. Norman v. Corbley, 32 Mont. 195, 79 Pac. 1059; Featherman v. Hennessy, 42 Mont. 535, 113 Pac. 751; Woodward v. Perkins, 116 Mont. 46, 147 Pac. (2d) 1016; Irion v. Hyde, supra 107 Mont. at page 88, 81 Pac. (2d) at page 354; Osnes Livestock Co. v. Warren, 103 Mont. 284, 298, 62 Pac. (2d) 206; St. Onge v. Blakely, 76 Mont. 1, 245 Pac. 532.

As was said previously, the one claiming adversely has the burden of proving the adverseness of his claim. Viewing the record in the light of the foregoing presumption in favor

of the trial court's judgment, and utilizing the rule that the trial court resolves any inconsistencies in the testimony, assuming it has reasonable grounds upon which to base its resolution, we are faced with the following facts mitigating against any adverse user by defendants: (1) The defendants testified they used water only during the flush period; (2) They testified they thought the water used would percolate back into the stream; (3) An expert testified for the defendants that he estimated at least thirty percent would percolate back into the stream; (4) Years before defendants used any water out of Beaver Creek it was normal for plaintiff to experience lack of water after June, (showing that if defendants did usurp plaintiff's rights after June, any paucity of water could be attributed to normal shortage, rather than adverse user); (5) The defendants' lands were isolated or well back from the main road, thus making discovery of irrigation difficult; (6) During the forties, until 1949, there was above normal rainfall; (7) Only two defendants had irrigated prior to 1941, and their irrigation had been confined to only twenty acres; (8) Lack of evidence showing plaintiff's stockholder's crops had suffered by lack of water during defendants' use, (a test laid down in Smith v. Duff, supra, and Boehler v. Boyer, supra, to indicate that the adverse claimant had invaded the prior appropriator's rights); (9) The plaintiff's witnesses testified they knew of no upstream irrigation until 1947; (10) That plaintiff's stockholders had experienced no shortage in the spring or early summer before 1949.

To weigh against the above facts in favor of defendants' claim are only their own statements of user for the prescriptive period. They do not prove or even attempt to prove that their use affected plaintiff's rights. They fail to show any invasion of plaintiff's rights. The burden was on defendants to prove every element of adverse possession. They have failed to prove one of the most vital of those elements, adverse user.

For the foregoing reasons the decree is affirmed.

MR. JUSTICES CASTLES, BOTTOMLY, and ANGSTMAN, concur.

MR. JUSTICE ADAIR:

I concur in the result but not in all that is said in the foregoing opinion.