GLENDENNING ET AL., RESPONDENTS, *v.* SLAYTON ET AL., APPELLANTS.

(No. 3,976.)

(Submitted March 19, 1919.   Decided April 14, 1919.)

[179 Pac. 817.]

*Trusts—Escrows—Deposits—Banks—Breach of Trust—Actions —Conversion—Assumpsit — Payment — Receipts—Wrongful Delivery—Effect.*

Appeal and Error—Pleadings—Sufficiency—New Trial Order—Review.
  1.   The sufficiency of a complaint not drawn in question in any way during trial could not be considered by the district court on the hearing of the motion for a new trial, and may not be passed upon by the supreme court on appeal from the order denying it; its sufficiency being reviewable only on appeal from the judgment.

"Escrow"—Definition.

2.   An "escrow" is a written instrument delivered to a third person to take effect upon the happening of a contingency and delivery of it to the person entitled to it.

[As to deeds delivered in escrow, see note in 53 Am. St. Rep. 555.]

Same—What not Susceptible of Being Placed in Escrow.

3.   Under the above definition, neither money nor a receipted bill, deposited in bank under an agreement between parties to a proposed lease of coal land, could properly become the subject of an escrow, neither being a written contract.

Trusts—Breach—Actions—Conversion—*Assumpsit.*

4.   A bank which accepts a deposit of money in trust for the benefit of another, to be delivered to a third party upon the happening of a contingency, is bound to the highest good faith in executing the trust thus created; disposition of the deposit contrary to instructions renders the bank liable in damages either for a conversion, or in *assumpsit* for money had and received.

Same—Banks—Breach of Trust—Evidence—Insufficiency.

5.   Evidence, in an action in *assumpsit* against a bank to recover a deposit of money, accepted by it in trust to be delivered to one of the parties to an assignment of a lease, upon the happening of a certain contingency, *held* insufficient, in the circumstances attending the transaction, to warrant a finding that in applying the money deposited to the discharge of debt due it from the assignor, it had violated the trust.

Payment—Receipts—Wrongful Delivery—Effect.

6.   A receipted bill deposited with a bank to be by it delivered to the debtor upon a showing that certain conditions precedent to the completion of an assignment of a lease had been fulfilled was not effective as evidencing payment *pro tanto* of the debt, if wrongfully delivered before the happening of the contingency, but could be recovered from the debtor upon a showing that delivery thereof was unauthorized.

*Appeal from District Court, Musselshell County; Chas. L. Crum, Judge.*

ACTION by W. H. Glendenning and J. C. Gregg, copartners doing business under the firm name of Glendenning & Gregg, against D. W. Slayton, L. Lehfeldt, Martin Johnson, A. C. Bayers et al., copartners doing business under the firm name and style of Bank of Ryegate. Judgment for plaintiffs. Defendants appeal from an order denying their motion for a new trial. Reversed and remanded for new trial.

*Mr. V. D. Dusenbery* and *Messrs. Johnston & Coleman,* for Appellants, submitted a brief; *Mr. H. J. Coleman* argued the cause orally.

The escrow agreement to which plaintiffs testify was for their own benefit and protection, but they themselves saw fit to

waive the terms thereof, according to their own testimony. It is a general rule of law that any act done by a buyer of goods tendered in fulfillment of a contract of sale, which he had no right to do if he were not the owner, constitutes an acceptance of the sale. (1 Beach on Contracts, sec. 107; Clark on Contracts, 2d ed., 466; Friedman on Sales, sec. 197; *Young Bros. Mach. Co.* v. *Young,* 111 Mich. 118, 69 N. W. 152; *Wolf Co.* v. *Monarch etc. Co.,* 252 Ill. 491, 50 L. R. A. (n. s.) 808, 96 N. E. 1063.) When the grantees of an escrow receive same before the condition is performed, they are estopped to avoid it or say that no title passed; because, as grantees they had obtained possession of it before the condition had been performed. (*Balue* v. *Taylor,* 136 Ind. 368, 36 N. E. 269; *Gochnauer* v. *Union Trust Co.,* 225 Pa. St. 503, 74 Atl. 371; *Oland* v. *Malson,* 39 Okl. 456, 135 Pac. 1055; *Hodo* v. *Leeman,* 27 Tex. Civ. 204, 65 S. W. 381.) On December 13, 1910, the plaintiffs received and accepted the assignment and bill of sale. They were thereby vested with all the title of the coal company to the property therein described. Thereafter, they treated and dealt with this property in a manner inconsistent with any other theory than that of ownership thereof.

The only breach which the evidence in the case tends to support is a delivery before a proper bond had been secured by the plaintiffs. The duty to secure the bond was incumbent upon the plaintiffs themselves. It was no part of the defendants' obligation, nor was it the obligation of the coal company. From the only evidence in the case which tends to show why no bond was procured, it appears that it was due to the failure of the plaintiffs to incorporate a company, as required by the bonding company or companies, and as suggested by the register of state lands. Their failure to secure the bond was due to their own negligence. "If the condition is not complied with through the depositor's negligence, he ought not to be heard to complain." (16 Cyc. 577; *Hodo* v. *Leeman,* 27 Tex. Civ. 204, 65 S. W. 381.)

The understanding and intention of the parties was that the sum of $804 was to go to the defendant bank to take up the

coal company's obligation with it. That very fact was one of the conditions of the sale. The plaintiffs furnished this payment by executing and delivering to the bank their individual notes. Thus, under plaintiffs' theory, the defendant bank was depositary for itself as beneficiary. "An instrument, complete on its face, and intended to take effect eventually, as a bond or note, cannot be an escrow when deposited with obligee, or with one of several obligees, or with the payee; for such deposit operates immediately as a final delivery and avoidance of the conditions." (16 Cyc. 571, 572; *Dils* v. *Bank of Pikeville,* 109 Ky. 757, 60 S. W. 715; *Campbell* v. *Jones,* 52 Ark. 493, 6 L. R. A. 783, 12 S. W. 1016; *Clanin* v. *Esterly H. Mach. Co.,* 118 Ind. 372, 3 L. R. A. 862, 21 N. E. 35; *Carter* v. *Moulton,* 51 Kan. 9, 37 Am. St. Rep. 259, 20 L. R. A. 309, 32 Pac. 633; *Wier* v. *Batdorf,* 24 Neb. 83, 38 N. W. 22; *Larsh* v. *Boyle,* 36 Colo. 18, 86 Pac. 1000.)

*Messrs. Collins, Campbell & Wood,* for Respondents, submitted a brief; *Mr. Sterling Wood* argued the cause orally.

Appellants could not use the influence which their position gave them to obtain any advantage over respondents (Rev. Codes, sec. 5377), and since they did use and dispose of the trust property for their own benefit and for a purpose unconnected with the trust, they can be held to account to respondents for its proceeds with interest. As said by the supreme court of Oregon in the recent case of *Foulkes* v. *Sengstacken,* 83 Or. 118, 158 Pac. 952, 163 Pac. 311: "Strictly speaking, the depositary is not the agent of the grantor, nor is he the agent of the grantee, but he is rather the trustee of an express trust." (*Sabin* v. *Phoenix Stone Co.,* 60 Or. 378, 118 Pac. 494, 119 Pac. 724; *Moore* v. *Trott,* 156 Cal. 353, 134 Am. St. Rep. 131, 104 Pac. 578; *Seibel* v. *Higham* (Mo.), 115 S. W. 987.)

Where the holder of an escrow wrongfully delivers the same before the happening of the conditions upon which delivery is to be made, such holder is liable therefor. 10 Ruling Case Law, 634, states the liability of the holder of an escrow as fol-

lows: "As the depositary is bound by the terms of the deposit and charged with the duties voluntarily assumed by him, the rule is that liability attaches to him, if he improperly parts with his deposit." (See, also, 16 Cyc. 576; *Citizens' Nat. Bank* v. *Davisson,* 229 U. S. 212, Ann. Cas. 1915A, 272, 57 L. Ed. 1153, 1158, 33 Sup. Ct. Rep. 625; *Davisson* v. *Citizens' Nat. Bank,* 15 N. M. 680, 113 Pac. 598; *Brown* v. *Citizens' State Bank, Ltd.,* 17 Idaho, 716, 107 Pac. 405.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

In this cause plaintiffs recovered a judgment. The defendants have appealed from an order denying their motion for a new trial.

The circumstances out of which the action arose, gathered from the complaint, are, briefly stated, as follows: Prior to December 13, 1910, the Ryegate Coal Mining Company, hereafter referred to as the corporation, held a lease for a term of years from the state of Montana, of certain coal land situate in Meagher, now Musselshell, county. On that date it entered into a contract with the plaintiffs under the terms of which it agreed to assign to them the lease free from all encumbrances held upon the land by the state of Montana, by reason of debts due it from the corporation, and to sell them all personal property used in operating the mine. The price to be paid by the plaintiffs was $1,000. Of this sum, $804 was to be paid in cash and the balance, $196, by a credit to be given the corporation upon an account due from it to the plaintiff Gregg, evidenced by a receipt in the form of a receipted bill. The defendants were associated, with other persons not parties to this action, as copartners in conducting a banking business at Ryegate under the firm name of the Bank of Ryegate. Upon the execution by the corporation of the assignment and bill of sale, it was orally agreed between it and the plaintiffs that the $804 in cash and the receipted bill should be deposited with the defendants, to be held "as an escrow in trust" for the parties to

be turned over to the corporation whenever it had within a reasonable time paid all the charges due the state and had furnished to the defendants, for the plaintiffs, satisfactory evidence that such charges had been paid and that the title to the leased premises was clear and unencumbered. The deposit was made as agreed, and the Bank of Ryegate accepted the deposit in trust, and as an escrow.

It is alleged that on or about January 13, 1911, the defendants, disregarding the conditions of the trust and without waiting until the corporation had furnished satisfactory evidence that its indebtedness to the state had been paid and a clear title to the premises furnished to the plaintiffs, and without the knowledge and consent of the plaintiffs, wrongfully and unlawfully applied the sum of $804 on an indebtedness due to the defendants from the corporation; that the defendants did not receive from the corporation an assignment of the lease with satisfactory evidence that the indebtedness had been paid; that the defendants knew that the indebtedness had not been paid; that no assignment of the lease with satisfactory evidence of the discharge of the indebtedness was ever furnished by the corporation to either the plaintiffs or the defendants; that on or about September 1, 1911, the plaintiffs having learned that the defendants had misapplied the sum of $804 contrary to the terms of the trust, demanded a return thereof together with the receipted bill, but that defendants refused and still refuse, to return the same. It is further alleged that at the time the deposit was made, the corporation was greatly indebted to the state for rents and royalties theretofore accrued, under the lease, but the amount of the indebtedness is not stated. Judgment is demanded for the sum of $1,000, with interest thereon from September 1, 1911.

In their answer, defendants admit that the plaintiffs purchased from the corporation the lease and all the right, title and interest of the corporation in the land referred to in the complaint. They deny all other material allegations therein contained. As an affirmative defense, they then allege, in sub-

stance, that plaintiffs, with full knowledge of all the facts and circumstances connected with the alleged trust agreement, accepted and received the assignment of the lease from the defendant Martin Johnson and forwarded the same to the register of state lands for the purpose of having it formally approved and accepted, and endeavored to procure a new bond running from the plaintiffs to the state of Montana, as is required by law in the event of an assignment of a lease of state land; that plaintiffs soon thereafter took possession of the leased premises, proceeded to operate the coal mines located thereon and extracted therefrom large quantities of coal; that they also took possession of all the appliances used by the corporation in mining coal, and have ever since kept them and appropriated them to their own use. They further allege that in order to raise the sum of $804 referred to in the complaint, plaintiffs gave their individual notes, payable to the Bank of Ryegate, plaintiff Gregg giving his note for $304, due July 1, 1911, and the plaintiff Glendenning giving his note for $500, due June 1, 1911; that although at the time the plaintiffs were fully advised of all the facts and circumstances concerning the acts of the defendants in connection with the said trust, they voluntarily paid their notes to the defendants; that on or about the ninth day of April, 1912, the plaintiff Glendenning, acting for himself and the plaintiff Gregg, paid to the register of state lands the sum of $60 to apply upon the rent due under the terms of the lease; that on or about the twenty-third day of April, 1912, the plaintiffs brought an action in the district court of Musselshell county against the corporation and others, seeking to recover from the defendants therein damages for the alleged breach of that clause of the assignment of the lease whereby the corporation had warranted the lease to be clear and free from all encumbrances; that at the time of the happening of these events the plaintiffs were fully advised as to all of them, and that by reason thereof they were estopped to assert that the defendants violated the terms of the alleged trust agreement as set forth in the complaint, and by their conduct ratified the pay-

ment of said money by the defendants. Upon this defense there was issue by reply.

The contentions made in this court are (1) that the complaint does not state a cause of action; (2) that the evidence is insufficient to justify the verdict; (3) that the court erred in refusing to submit to the jury certain instructions requested by the defendants; and (4) that it erred in refusing to grant a new trial on the ground of newly discovered evidence.

The questions presented by the first contention cannot be considered or determined on this appeal. The appeal is from [1] the order denying the defendants a new trial. At no time during the trial was the sufficiency of the pleading drawn in question by objections to the introduction of evidence or other appropriate method. Hence its sufficiency could not be considered by the trial court on a hearing of the motion, nor may it be considered by this court on appeal from the order disposing of it. It could be considered only on appeal from the judgment. (*Campbell* v. *Great Falls,* 27 Mont. 37, 69 Pac. 114; *Ayotte* v. *Nadeau,* 32 Mont. 498, 81 Pac. 145; *Leggat* v. *Gerrick,* 35 Mont. 91, 8 L. R. A. (n. s.) 1238, 88 Pac. 788; *O'Rourke* v. *Grand Opera House Co.,* 47 Mont. 459, 133 Pac. 965.)

It is not clear from the allegations of the complaint whether the theory of counsel in formulating it was that the deposit made with defendants was an escrow, or created a trust to be executed by defendants as trustees for the plaintiffs and the corporation upon the fulfillment by the latter of the conditions [2] upon which it was to be executed. As defined by the common law, an "escrow" is a written instrument delivered to a third person to take effect upon the happening of a contingency (2 Blackstone, 307). It becomes effective only on delivery after the happening of the contingency. This definition of the term is recognized by section 4599 of the Revised Codes. The term originally applied to deeds only, but has now been extended to written instruments generally. (Anderson's [3] Law Dictionary, 413; *Alexander* v. *Wilkes,* 11 Lea

55 Mont.—38

(Tenn.), 221, 225.)    The deposit in question was not an escrow under either the original or the extended application of the term, because neither the money nor the receipted bill had any of the attributes of a written contract,—the receipted bill, the only writing included, being a mere acknowledgment of payment.    That it was not an escrow, however, is not important. [4]  By accepting it, the defendants became voluntary trustees for the benefit of plaintiffs and the corporation (Rev. Codes, sec. 5371) and thus became bound to the highest good faith in executing the trust (sec. 5374).    They could not deal with it for their own benefit or for any other purpose not connected with the trust.    (Sec. 5375.)    The title to the deposit remained in the plaintiffs until all the attached conditions had been fulfilled, and any disposition of it contrary to the agreement between plaintiffs and the corporation amounted to a conversion of it, rendering the defendants liable.    The plaintiffs deeming themselves wronged by the disposition of it by the defendants, were at liberty to bring action against them, either for damages for a conversion, or in *assumpsit* for money had and received.    As we read the complaint, counsel elected to sue in *assumpsit* upon the implied promise of defendants to return the deposit to them upon the failure of the corporation within a reasonable time to fulfill the conditions upon which it was made.

The issues of fact presented by the pleadings and submitted to the jury for a solution were: Did the defendants accept the deposit under the agreement alleged in the complaint?  Did they make disposition of it in violation of the agreement?  If so, did the plaintiffs, after learning of the disposition made of it, ratify the defendants' conduct in disposing of it, and thus preclude a recovery in this action?

Upon the issue whether the trust agreement was made as alleged, the evidence was in hopeless conflict.    The jury having resolved this question in favor of the plaintiffs and the trial court having refused a new trial, this court may not revise its action.    In our opinion, however, there was no substantial evi-

dence to justify a finding that the defendants violated their duty under the agreement.

The plaintiffs' evidence, which was not aided in any way by [5] that of defendants, tended to show: When the agreement for the assignment and sale by the corporation of its rights under the lease was made, the corporation was indebted to the defendants to the amount of $804 for borrowed money. . It was understood that if there was no encumbrance upon the land growing out of indebtedness due the state, the defendants were to apply the money deposited with them to the payment of this indebtedness and deliver the receipted bill to the corporation as evidence of a *pro tanto* payment of plaintiff Gregg's account. The plaintiffs borrowed the money from the defendants by executing and delivering to them their promissory notes, as alleged in the answer. These notes embodied no condition, nor were they delivered upon any condition. In theory, therefore, the $804 became a fund in the hands of defendants to serve the purpose of the trust. The assignment with the bill of sale embodied in the same instrument, was executed in duplicate. One copy was delivered to plaintiffs' attorney, and the other left in the possession of plaintiffs and defendant Johnson, who acted for all of the other defendants. The plaintiffs on the same day wrote to the state register of lands at Helena, inclosing the duplicate copy left with them, and requested the register to send them a contract of lease and a bond, the former to be executed by them and the latter by them and some surety company which was authorized to do business in Montana. Defendant Johnson wrote this letter for them at their request. To this letter the register replied on December 22, informing plaintiffs that the state board of land commissioners, having considered their letter of December 13 inclosing the assignment, had instructed him to inform them that their request had been granted, and that all the necessary papers, including a form of bond, for execution would be forwarded as soon as they could be prepared. On December 29 the register wrote to plaintiffs, inclosing a form of bond attached to a copy of a

new lease, for execution, and a copy of an agreement which plaintiffs were required to enter into with the state coal mine inspector, stipulating how the coal thereafter extracted should be weighed in order to determine the amount of royalties which would become due under the lease. In this letter the register inclosed a bill for the fee required for recording the assignment. This bill and the fee for filing the lease the plaintiffs paid on March 27. The arrangement was that the lease and agreement should take the place of the assigned lease. The bond was intended to secure the faithful performance of the covenants of the lease and the agreement with the coal mine inspector. The new lease and bond were exacted under the regulations which had been adopted by the state board of land commissioners, and it was fully understood by the plaintiffs that they must furnish them in order to become substituted in the place of the corporation as lessees. There was correspondence thereafter by the plaintiffs in person and by defendant Johnson in their behalf, touching the ability of plaintiffs to give the required bond. They complained to the register that the surety companies refused to furnish a bond unless they would become incorporated. Finally they were informed by the register that no kind of a bond would be acceptable other than one executed by a surety company. He suggested that the expense of forming a corporation was not great and encouraged them to do this. They did not thereafter furnish the bond and, so far as the evidence discloses, did not make any earnest effort to do so. After the assignment was executed, on December 13, the plaintiffs, not waiting for its approval by the state board of land commissioners, went into the possession of the land and of all of the appliances of the corporation and began to mine and sell coal. They continued their operations until they were notified by the register on March 30, 1911, that they were trespassers and must cease their operations until they furnished the required bond and executed the new lease. They thereupon ceased operations for the time being, but resumed them again and continued them during the following

winter. At the trial they undertook to explain their acts in this behalf by saying that the mine was the only source of supply of coal available to the people of Ryegate, and that they had conducted their operations at the request of the officers of the corporation to meet the necessities of the Ryegate people.

The foregoing brief narrative is gathered from the evidence introduced by the plaintiffs. That introduced by the defendants tended to show that the assignment was an unconditional sale of the rights of the corporation, and that the claim that the defendants were parties to the transaction as fiduciaries, or in any other capacity, was wholly unfounded. A careful scrutiny of the story as told by the plaintiffs, leaves a serious doubt whether it is entitled to any credit. But assuming for present purposes that the agreement was made as they allege, and that defendants agreed to hold the deposit until the corporation furnished satisfactory evidence that the land was free from any encumbrance in favor of the state which would affect the validity of the assignment, we do not think they were entitled to recover. It is true that, from a technical point of view, the officers of the corporation did nothing in the way of furnishing evidence that it was not indebted to the state, nor that the assignment carried all of its rights free from encumbrance. As soon, however, as the plaintiffs were notified by the register of the land office that the assignment had been approved and the new lease and bond were forwarded for execution, no condition being reserved and no mention being made of any indebtedness due from the corporation to the state (there is no evidence in the record whatever that there was any indebtedness), they had in their hands evidence that should have satisfied any reasonable person that they had received all they had bargained for. Defendant Johnson had written the letter of December 13, 1910, for them, at their request. According to Glendenning's testimony, this defendant undertook to aid them in procuring a satisfactory bond. He therefore had knowledge that the purpose of the trust had been fully accomplished and, though he applied the money upon his own knowledge and not

upon evidence furnished by the officers of the corporation, he did the plaintiffs no wrong. True, the plaintiffs both testified without objection that one of the conditions attached to the deposit was that it should not be applied until the plaintiffs had been able to procure a bond. In submitting the case to the jury, however, the court eliminated this evidence from the case by directing the attention of the jury to the agreement alleged in the complaint, and instructing them to find for the defendants unless they were satisfied from all the evidence that an agreement had been made as alleged and had been violated by the defendants. The case as made, therefore, failed to show that the plaintiffs suffered any wrong for which they were entitled to recover. As a whole, it suggests that when the plaintiffs found that they would be compelled to incur the expense of forming a corporation in order to procure a bond, they repented of their bargain and concluded to demand a return of their money, upon the theory that the corporation was at fault in not supplying the evidence which they themselves had procured by having the board of land commissioners approve the assignment. The court should have granted defendants a new trial.

Some evidence was introduced by defendants for the purpose of showing that the plaintiffs by their conduct after they ascertained that the defendants had applied the $804 to the discharge of the indebtedness due them from the corporation, ratified this disposition of it. We do not think this evidence sufficient to establish a ratification. The conclusion already reached, however, renders reference to it in detail unnecessary.

There is no evidence disclosing what became of the receipted bill. In this connection it may be remarked that under no circumstances were the plaintiffs entitled to recover the amount [6] of it. Even if the defendants wrongfully delivered it to the corporation, it was not effective as a payment *pro tanto* of the indebtedness due plaintiff Gregg. Plaintiffs, if they so desired, could recover from the corporation by showing that the delivery was unauthorized.

In their brief, counsel do not point out wherein the court erred in refusing to submit the requested instructions. Our examination of them does not convince us that it did. In so far as any of them were pertinent to any issue presented by the pleadings, they were fully covered by those submitted.

Since a new trial must be ordered on the ground of insufficiency of the evidence to justify the verdict, it is not necessary to consider the value of the newly discovered evidence.

The order is reversed and the district court is directed to grant the defendants a new trial.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE COOPER concur.