CONNER ET AL., RESPONDENTS, *v.* HELVIK ET AL., APPELLANTS.

(No. 7,693.)

(Submitted September 28, 1937.   Decided November 13, 1937.)

[73 Pac. (2d) 541.]

438

*Mr. E. C. Kurtz,* for Appellants, submitted an original and a reply brief, and argued the cause orally.

440

*Messrs. Pope & Smith,* for Respondents, submitted a brief; *Mr. Walter L. Pope* argued the cause orally.

444

MR. JUSTICE MORRIS delivered the opinion of the court.

Plaintiffs brought this action to compel the specific performance of a contract to sell and purchase real property. After

some preliminary negotiations relative to the sale and purchase, the parties met on March 9, 1935, at the law office of O'Hara & Madeen, at Hamilton, Montana. The plaintiffs made and acknowledged a deed of conveyance to the defendants, and the defendant L. L. Helvik made and signed a check payable to the order of the plaintiffs for the purchase price of the land; the deed and check were deposited with R. A. O'Hara, a member of the law firm mentioned above.

It appears to have been the intention of the parties to place the deed and check in escrow at a local bank, the deed to be delivered to the defendants and the check to the plaintiffs when the plaintiffs obtained and delivered a release of a mortgage held by the Federal Land Bank, covering a part of the land conveyed; but such tacit understanding about depositing the documents in the bank was never carried out. They were left in the custody of Mr. O'Hara, and it would appear from the record that the parties by their subsequent actions considered O'Hara as the escrow holder.

Delay was encountered in obtaining the release of the mortgage, and on October 24, 1935, defendants mailed to the plaintiffs the following letter:

"You are hereby notified that unless within thirty (30) days from this date you obtain a release of the Federal Land Bank mortgage on the land you agreed to sell us and for which deed was deposited with Mr. O'Hara at Hamilton, we will direct him to return deed to you and withdraw our check and call the transaction off. We do not feel that we can keep this matter open any longer."

On or about November 5, 1935, plaintiff Conner received the release of the mortgage from the Federal Land Bank, and on the following day called the defendant Helvik by 'phone and advised him that the release had come, and to come down and settle up. It does not appear from the record whether plaintiff received any response to this advice or not, and on November 16 thereafter the plaintiffs had a letter prepared which they signed and addressed to R. A. O'Hara, and the plaintiff Conner personally delivered such letter to Mr. O'Hara and at

the same time delivered to O'Hara the release of the mortgage. Such letter was in the following words:

"In accordance with our contract with Lewis L. Helvik and Lena C. Helvik, with reference to certain lands in Ravalli county, Montana, and for which you hold a deed from us in favor of them to be delivered when the Federal Land Bank mortgage on the same has been released and is ready for delivery, we now herewith tender you said release and authorize you to turn over the same along with the deed to the said Helviks and demand that you turn over to us the check you hold as the purchase price thereof. Should you not see fit so to do we hereby demand that you retain said papers and the check representing the purchase price of said lands, until there has been a determination of the rights of the respective parties by a court of competent jurisdiction."

About the same time the defendants notified O'Hara not to deliver any of the instruments held by him to any person. Such was the situation, as it appears from the record, when this action was commenced.

In addition to the foregoing facts, the complaint alleges that on March 9, 1935, plaintiffs were the owners of certain lands therein described, free and clear of encumbrances, except a mortgage to the Federal Land Bank of Spokane; that on the date last mentioned plaintiffs orally agreed to sell, and defendants orally agreed to buy, a certain tract of land about which prior negotiations had been carried on; that the purchase price was $1,000, to be paid upon plaintiffs' obtaining a release from the Federal Land Bank of the mortgage heretofore mentioned; that defendants should pay the taxes for 1935 and thereafter; that the deed and check deposited with O'Hara should be delivered to the respective parties upon the receipt and delivery of the release of mortgage referred to; that by reason of the mistake of the scrivener the land agreed to be sold and purchased was misdescribed, which was not discovered by plaintiffs until a short time prior to the commencement of the action; that the grant was of 21 acres more or less and that 24.4 acres were actually conveyed by the deed, and that the amount in-

cluded by mistake is a small area and not an inducing factor in the agreement; that defendants took possession of the land, irrigated the same, harvested two crops of hay therefrom, retained such crops, and paid one-half the taxes for the year 1935 in accordance with the agreement; admits the receipt of defendants' letter of October 24, 1935; that plaintiffs obtained the release after overcoming objection of the mortgagee and deposited the same with R. A. O'Hara within the 30 days mentioned in defendants' letter of October 24, supra; that the defendants have refused to deliver the check or pay the purchase price on request; that plaintiffs have performed all of the obligations imposed upon them by the agreement and are ready and willing to convey a fee simple title to defendants free and clear of all liens, mortgages, encumbrances, and defects of title whatsoever, and pray that the deed be reformed to convey only such land as the parties agreed upon in their oral negotiations, for the payment of the purchase price of $1,000, with interest thereon from November 10, 1935, and for such further relief as may be just and proper. Copies of the deed involved and the check of defendants deposited with R. A. O'Hara are made Exhibits A and B, respectively, attached to and made a part of the complaint.

Defendants' demurrer to the complaint was overruled. The answer is a general denial of all the material allegations of the complaint; it admits farming the land involved in the year 1935 and the payment of one-half the 1935 taxes, but alleges that such payment was made inadvertently by reason of the fact that such taxes were mixed up with defendants' own taxes and that such payment was made by oversight. Plaintiffs' reply is confined to a denial that such taxes were inadvertently paid by defendants.

The cause was tried by the court sitting without a jury. After the introduction of evidence and the arguments by counsel, the court on request made findings of fact in writing, which were, in substance, as follows: That the deed did not correctly describe the land intended and agreed to be sold; that the title to the land involved was in the plaintiffs and Clara A. Wolfin-

barger; that the deed deposited with R. A. O'Hara, in which the defendants were named as grantees, was not signed by Clara A. Wolfinbarger; that the erroneous description was caused by the inadvertence and excusable neglect of the parties, and the deed did not correctly indicate the true intent of the parties; that plaintiffs agreed to furnish defendants a good and marketable title to the land described in the deed; that, at the same time and place where the deed was delivered, defendants delivered to R. A. O'Hara a check for $1,000 as and for the purchase price of the land, and that the deed and check were to be delivered to the respective parties entitled thereto when the mortgage release was obtained and delivered; that thereupon defendants went into possession of the land involved, cut two crops of alfalfa therefrom in the year 1935, used the land for pasturing livestock, and paid taxes thereon; that plaintiffs used reasonable diligence in obtaining the release of the mortgage; that plaintiffs received the letter of defendants dated October 24, 1935, in due course, and received and delivered the release of mortgage to R. A. O'Hara, and advised defendants of such action, all within the 30 days mentioned in the letter of October 24; that, on the date of delivery of the release of mortgage to R. A. O'Hara, plaintiffs were the owners in fee of the land heretofore described, free and clear of all encumbrances and clouds of title, were willing and ready to convey the same to the defendants by a good and sufficient warranty deed, but defendants refused to do or perform the obligations by them to be performed in the premises; that the land excluded by reformation of the deed has no particular value and is not necessary to the use of the land agreed to be sold. The court thereupon directed judgment to be entered in favor of the plaintiffs, reforming the deed as prayed for, for the payment of $1,000 by defendants to plaintiffs, and allowing plaintiffs' costs. From such judgment defendants appeal.

Twenty-four assignments of error are specified. As we view the matter, the determinative questions to be solved are as to whether or not the contract is within the statute of frauds,

whether plaintiffs were entitled to reformation of the deed, and whether the deed conveys to defendants a marketable title.

Defendants contend that the amended complaint affirmatively shows that the contract was oral, and, such being the fact, the contract comes within the statute of frauds. We think defendants misinterpret the third paragraph of the complaint. It is there alleged "that on or about the 9th day of March, 1935, the plaintiff orally agreed to sell and the defendants orally agreed to buy the lands upon the following terms, to-wit. * * * " If this were all the parties did, certainly this action could not be maintained. But the part of the complaint just quoted is merely a preliminary recital preceding what is subsequently alleged to have been done to carry out the oral agreement; namely, the meeting at the office of O'Hara & Madeen, the execution of the deed, the making of the check, and the deposit of the deed and check with O'Hara, pending the receipt of the release of mortgage from the Federal Land Bank, and thereafter the receipt and delivery of such release to O'Hara.

Depositing the deed and check with O'Hara constituted O'Hara the escrow holder, irrespective of the expressed intention in the beginning to select a bank to hold the instruments. Section 6846, Revised Codes, provides: "A grant may be deposited by the grantor with a third person, to be delivered on performance of a condition, and, on delivery by the depositary, it will take effect. While in the possession of the third person, and subject to condition, it is called an escrow." This section was construed by this court in *Glendenning* v. *Slayton*, 55 Mont. 586, 179 Pac. 817.

As further explanation of the meaning of "escrow" it is said in 21 C. J., pages 866, 867: "The term 'escrow' was originally applied to instruments for the conveyance of land, but it is now applied to all written instruments so deposited. * * * To constitute an instrument an escrow it must be deposited with the intention that it shall take effect upon the performance of an express condition or the happening of a certain event, and, as such condition or event is what differentiates an escrow from a completely executed instrument, * * *

the condition must be one in fact which will prevent the operation of the instrument until it is performed." The condition upon which the deed and check were left with O'Hara was the procurement of the release of the mortgage by the Federal Land Bank. It is further said in 10 Ruling Case Law, section 623, page 4: "No precise form of words is necessary to constitute an escrow. The term 'escrow' need not be used, nor will the misuse of that term in designating an instrument necessarily make it an escrow."

It appears from the argument of counsel that defendants' position is that a formal, written instrument must accompany a deed deposited in escrow, and that such formal written instrument must conform to all of the requirements of the statute of frauds essential to a deed conveying land, and that, because the deed and check deposited with O'Hara were not so accompanied, no contract was made that will stand the test of the statute of frauds. This view is erroneous for the reason that the deed and check constituted the escrow. An agreement to deposit an instrument in escrow may be made orally, according to the general rule. (10 R. C. L., p. 623, sec. 5; 21 C. J. 868, sec. 7.) The citations from the text-books are supported by numerous authorities.

"The condition upon which an instrument is delivered in escrow need not, however, be expressed in writing, but may rest in parol, or be partly in writing and in part oral. The rule that a contract or instrument made in writing *inter partes* must be deemed to contain the entire writing or understanding has no application in the case of escrows. It is only necessary that it should distinctly appear from all the facts and circumstances attending the execution and delivery, that the instrument was not to take effect until a certain condition should be performed, and where the language of a written escrow agreement is vague and indefinite, it is the duty of the court in construing it to inquire into the circumstances and conditions existing when it was made, in order to ascertain the intention and actual meaning of the parties." (10 R. C. L., pp. 623, 624.)

In volume 21 of Corpus Juris at pages 868 and 869, section 7, it is stated: "At common law an apt and proper form of words was required to evidence the deposit of an instrument as an escrow, but this is no longer required. It will generally depend rather on the words and purposes expressed than upon the name which the parties give to the instrument. Thus the term 'escrow' need not be used; nor on the other hand will the use of the term necessarily make the instrument an escrow. When, however, the term is used, it indicates more clearly and distinctly than any other the actual intention of the parties. Although some of the authorities hold that the condition upon which the instrument is deposited in escrow must be expressed in writing, the weight of authority is to the effect that it need not be. The rule that an instrument of contract made in writing between the parties must be deemed to contain the entire agreement has no application. No particular form of words is necessary to constitute an escrow; the terms of the escrow stipulations may be derived from all the circumstances. However, it obviates all questions as to the intention of the parties if at the time of the deposit it is expressly declared that the instrument is to be delivered upon the performance of such conditions."

In our view, therefore, the contract here under consideration does not fall within the statute of frauds, for two reasons: First, awaiting the fulfillment of the condition, which was the receipt and delivery of the release of the mortgage, the defendants took possession of the land conveyed, harvested the crops, grazed their livestock on the grass, and paid half the taxes due for the current year. This would take the contract out of the statute of frauds on the ground of part performance. (*Rentfro* v. *Dettwiler,* 95 Mont. 391, 26 Pac. (2d) 992; *Hogan* v. *Thrasher,* 72 Mont. 318, 233 Pac. 607; *McIntyre* v. *Dawes,* 71 Mont. 367, 376, 229 Pac. 846; *Kettlekamp* v. *Watkins,* 70 Mont. 391, 398, 225 Pac. 1003; *Eccles* v. *Kendrick,* 80 Mont. 120, 259 Pac. 609.) Second, while the deed and check were in the hands of O'Hara, defendants wrote the letter of October 24, supra, fully setting out the material facts, ac-

knowledging that the deed and check were in O'Hara's hands awaiting receipt of the release of the mortgage, and acknowledging that they had agreed to purchase the land. This was a writing signed by the party to be charged, referred to in the statute, and clearly sufficient to bar the operation of the statute. Either of these two happenings is sufficient to bring the agreement within the requirements of subdivision 5, of section 7519, Revised Codes.

On the question of the court erroneously granting plaintiffs' ██ motion to reform the deed, no absolute rule can be laid down but the right of reformation depends upon the particular facts and circumstances of each case. (*George* v. *Fritsch L. & T. Co.,* 69 Utah, 460, 256 Pac. 400, 404.) And "the right to reformation of an instrument depends on an equitable showing." (53 C. J. 923, sec. 29.) The evidence establishes the fact that the deed as reformed conveyed to defendants 24.4 acres of land, while the deed as originally made referred to the tract conveyed as containing 21 acres more or less. The price for the tract that was verbally agreed upon was $1,000. Thus the defendants obtained by the instrument, as reformed 3.4 more acres of land than they believed they were buying, and at the same price that they were to pay for 21 acres; and in no particular does it appear that the enforcement of the contract against defendants will in any manner be inequitable or unfair. "A broad ground on which a court will reform an instrument is that it does not accurately set forth the terms of a prior agreement which it was supposed to express." (53 C. J. 925.)

The evidence as to the mutual mistake of the parties in describing the lands is in sharp conflict; the trial court found the misdescription was due to mutual mistake, and, in accordance with the established rule, such finding will not be disturbed on appeal unless it be contrary to a clear preponderance of the evidence. We are unable to say that there is a clear preponderance of the evidence against such finding. The burden of showing the insufficiency of the evidence to support the finding is on the party claiming such insufficiency. (*Gravelin* v.

*Porier,* 77 Mont. 260, 250 Pac. 823; *In re Cissel's Estate,* 104 Mont. 306, 66 Pac. (2d) 779; *Dean* v. *Stewart,* 49 Mont. 506, 143 Pac. 966.)

Defendants contend that plaintiffs did not have a marketable title, and ground such contention on the fact that the court found that the record title at the time of the trial stood in the names of plaintiffs and Clara A. Wolfinbarger. The court by a separate finding found that plaintiffs had a fee simple title, free and clear of encumbrances. Findings must be read and construed in their entirety. (*Chancellor* v. *Hines Motor Supply Co.,* 104 Mont. 603, 69 Pac. (2d) 764.) The finding of the court was not in conflict with the finding as to the record of title but was based on the fact that plaintiffs had a clear and marketable title by virtue of the unrecorded deed from Clara Wolfinbarger, then in possession of plaintiffs and presented in evidence at the trial of the action, but not recorded until after the hearing, and then by order of the court before the signing of the decree.

Defendants contend that record title should have been in plaintiffs before suit was commenced, and that, in any event, the trial court erred in allowing plaintiffs to record the deed before the decree was made and entered. The essentials of a title in a vendor suing for specific performance are defined in the case of *Ogg* v. *Herman,* 71 Mont. 10, 227 Pac. 476, 477, where it was said: "A good title is one free from litigation, palpable defects, and grave doubts, comprising both legal and equitable titles, and fairly deducible of record." The rule is that the vendor in a contract to sell need not show a marketable title until the time for performance arrives. (*Huston* v. *Vollenweider,* 101 Mont. 156, 53 Pac. (2d) 112.) On the question of tender of marketable title, where the vendee repudiates the contract and denies the obligation, thereby placing himself in a position where it appears that, if tender were made, acceptance would be refused, then no tender of marketable title need be made by the vendor until the time for passing title arrives. It is enough if the plaintiff produces sufficient evidence at the hearing showing ability to convey clear title. There was no

ground urged in support of this contention, except that the deed of Clara A. Wolfinbarger was not of record, and the further reason that the description of the land in the Wolfinbarger deed was insufficient and defective. The Wolfinbarger deed was in the possession of plaintiffs and was presented in evidence and recorded before the decree was made. This was sufficient. The ▆ description by itself, we think, is not sufficient. It is as follows: "All the property situated in Ravalli County, State of Montana, described as follows: Clara A. Wolfinbarger's undivided one-third interest in all lands deed by Julia A. Conner to Earl B. Conner, Clara A. Wolfinbarger and Grace E. Hoblitt." Obviously, the deed was prepared by a novice and the omission of the number of the Book of Deeds and page thereof where the Julia A. Conner deed was recorded makes it defective; but we think this defect was remedied by stipulation of counsel in open court, specifying the number of the Book of Deeds and the page where the Julia A. Conner deed was recorded. We think the general rule is correctly stated in 4 Thompson on Real Property, section 3082: "A deed referring ▆ accurately to another deed made to the grantor, and conveying all the parcels of land therein described, sufficiently describes such land." (See, also, *Vance* v. *Fore*, 24 Cal. 435, and *Mathews* v. *O'Donnell*, 289 Mo. 235, 233 S. W. 451.)

Defendants' contention that plaintiffs had an adequate rem- ▆ edy at law and should not be heard in a court of equity is without merit. Section 8717, Revised Codes, provides: "It is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation." Defendants presented no evidence to overcome the presumption. (See, also, secs. 8715 and 8716.) The contention that there is a lack of mutuality of remedies and that for that reason specific performance should not be decreed is likewise without merit. The applicable rule is announced in *Finlen* v. *Heinze*, 32 Mont. 354, 80 Pac. 918, 927, where it is said: "It is well settled that, where a contract has been fully performed by one party, want of mutuality cannot be set up by the other as a defense to an action for specific per-

formance. There is no room for the party in default to say that he could not enforce performance for want of mutuality." (See, also, *Hogan* v. *Thrasher*, supra.) It appears that at all times the plaintiffs had at command the means to remove any defect of title to the land within a reasonable time, and that they were diligent in performing all things that it was incumbent upon them to perform.

Other contentions of the defendants we do not deem of sufficient merit to warrant consideration. Finding no material error in the record, the judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and ANGSTMAN concur.