WILLS, RESPONDENT, v. MIDLAND NATIONAL LIFE INSURANCE CO., APPELLANT.

(No. 7,846.)

(Submitted February 15, 1939. Decided June 15, 1939.)

[91 Pac. (2d) 695.]

538

*Mr. N. A. Rotering, Mr. A. L. Sherin* and *Mr. C. R. Jorgenson,* of the Bar of Watertown, South Dakota, for Appellant, submitted a brief; *Mr. Jorgenson* argued the cause orally.

*Messrs. McCaffery & McCaffery,* for Respondent, submitted an original and a supplemental brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

The plaintiff is the beneficiary in a group insurance policy covering the life of her brother, Hugh Malloy, for $1,000. The policy provided for double indemnity "upon due proof of the death of insured * * * in consequence of bodily injury effected solely through external, violent and accidental means," within ninety days after injury, as a direct result thereof and independent of all other causes.

The complaint alleges, in substance, that the insured on the 18th day of January, 1937, at about 8 o'clock P. M., had gone from his place of residence to the main section of the city of Butte to attend the Rialto Theater; that he customarily used an automobile in traveling from his residence to the business section of Butte, but on this occasion the automobile was out of service and being repaired, making it necessary for him to use the street car; that between 8 and 9 o'clock in the evening a blizzard began and continued throughout the night, with the temperature getting as low as 40 degrees below zero; that his frozen body was discovered on Ottawa Street about 3 o'clock in the morning of January 19th about five blocks from his home; the body bore no evidence of injury other than freezing; it was lying face downward with the arms outstretched forward above the head; that the insured had gotten off the street car some blocks south of the proper place due to the frost or snow on the windows of the street car, making it difficult to determine the proper place to get off, and that as a result of the extreme cold and blizzard he succumbed thereto.

The answer contains an affirmative defense which alleges, in substance, that death was due to bodily or mental infirmity or disease, and voluntary exposure to unnecessary risk and not to accident. This defense was denied by reply.

The verdict of the jury gave the plaintiff the full amount of the double indemnity provided by the policy, and judgment was entered in accordance with the verdict. Defendant's motion for new trial was denied, and it appealed from the judg-

ment. The only question presented by the appeal is whether there was sufficient evidence that death was caused by accidental means to justify submission of the cause to the jury and to sustain the court's order in denying a new trial.

The evidence is to the effect that the insured left his sister's home, where he resided, between 7 and 8 o'clock in the evening of January 18th, with the expressed intention of attending the moving picture show at the Rialto at Park and Main Streets, which was approximately a mile and a half from the sister's home. He was seen on the street near the Rialto about 7:40 by his brother-in-law, a street car conductor, and they exchanged greetings. He was next seen about 11:30 by the witness John Foichat near the corner of Main and Mercury Streets. He was next seen by the witness Phil Hannafin at about ten minutes to 12 in Phil's Place. Both Foichat and Hannafin testified that the insured was sober at the times they saw him. There is no evidence that he was an excessive drinker, or, in fact, that he drank intoxicating liquor at all.

It is established by the uncontradicted testimony of a number of witnesses that it came on very cold about 8 o'clock on the evening of the 18th, with a heavy snow and strong wind from the northwest, a rapidly lowering temperature, and that about midnight it was 40 degrees below zero—a drop in the temperature of some 25 or 30 degrees between the time the insured left his home and midnight. The temperature at the time he left his home is not certainly fixed, but the record tends to establish the fact that it was somewhere between zero and 10 or 12 below, but not cold as compared with what it was a few hours later.

Prior to leaving his home that evening the insured asked his niece to go to the Lenz Drug Store and procure a quarter's worth of street car tokens; she did so and gave them to him; she gave him four tokens. He then left to go up town on the 7 o'clock car. The street car travels on Florence Avenue. At its intersections with George Street and Ottawa Street there are two similar curves, one at each of the intersections. Ottawa is a short block from the house where insured lived. Two

542

street car tokens were found on the body of insured at the time it was discovered. It is supposed that the others were used, one going each way up town and back. The body was found in about eighteen inches to two feet of snow, face downward and with the arms outstretched forward above the head; the head was toward the north.

The traffic on the street car was heavy on the night in question, and the windows were covered with frost and ice so that observation from the inside was obscured. It is the contention of plaintiff that the insured got off the street car on his return trip at the wrong place in a thinly settled locality in the city, making it necessary to walk farther than if he had disembarked at the proper place, and in consequence that he was overcome by the intense cold and deep snow and died from exposure and freezing. This is the theory upon which the cause was submitted to the jury by the court's instructions.

The evidence was sufficient to warrant submission of the cause to the jury, and to justify the court in denying the motion for a new trial.

It is elementary that in such a case as this, like any other case, the solution of any issue may rest upon circumstantial evidence. We so stated in *Dalbey* v. *Equitable L. Assur. Soc.*, 105 Mont. 587, 74 Pac. (2d) 432.

A case with some features similar to this was that of *Tuttle* v. *Pacific Mut. Life Ins. Co.*, 58 Mont. 121, 190 Pac. 993, 998, 16 A. L. R. 601. There recovery was denied, but in that case the insured's body was not discovered until some three years after he disappeared in the mountains on the trail of an elk. When he left camp the temperature was slightly below the freezing point, but was not cold enough to freeze a person out in the storm. The next day was pleasant but on the second day a heavy storm broke and continued for eight or ten days. His body was found about two miles from camp. His watch was in his vest pocket but the rifle he carried was nowhere in the vicinity. The skull was some thirty feet from the rest of the bones. At the time the body was discovered it was impossible to ascertain whether there had been any marks on it. This

case, with the temperature 40 degrees below zero, presents an entirely different situation from that present in the *Tuttle Case*. In that case this court recognized the rule that death engendered by exposure to cold cannot be said to be accidental "unless brought about by circumstances which may give it the character of accident"; or, as we stated in the *Dalbey Case* [105 Mont. 587, 74 Pac. (2d) 434], "It [the *Tuttle Case*] subscribed to the rule that, 'where, in the act which precedes an injury, something unforeseen or unusual occurs which produced the injury, the injury results through accident.' "

In the *Dalbey Case* we reiterated these controlling principles: "(1) That a policy of insurance is to be liberally construed in favor of the insured, and strictly construed against the insurer. (*DeVore* v. *Mutual Life Ins. Co.*, 103 Mont. 599, 610, 64 Pac. (2d) 1071.) (2) That this court indulges the presumption that the judgment of the district court is correct and will be upheld unless clearly shown to be erroneous, the burden of showing which rests upon the appellant. (*Herberson* v. *Great Falls Wood & Coal Co.*, 83 Mont. 527, 533, 273 Pac. 294.) (3) That the finding of the trial court will not be disturbed or reversed if the evidence, fully considered, furnishes reasonable grounds for different conclusions. (*Conner* v. *Helvik* [105 Mont. 437], 73 Pac. (2d) 541, and cases therein cited.) (4) That the solution of any issue may rest in whole or in part upon circumstantial evidence. (*Hier* v. *Farmers Mut. Fire Ins. Co.*, 104 Mont. 471, 67 Pac. (2d) 831, 110 A. L. R. 1051)."

In that case we also approved the statement from 1 C. J. S., using the following language: "The new work, 1 C. J. S. [Accident], p. 425 et seq., contains a very full, complete, and comprehensive discussion of the words 'accident' and 'accidental' and their meaning. It is there said that neither word has a technical, legal meaning, but must be considered in the light of the common and accepted meaning, and construed according to common speech and usage—that the common understanding contemplates something unanticipated, unforeseen, and unusual, without design, intention, or premeditation." We there held that a fireman whose death was brought about by

inhaling smoke, while fighting a fire, was the victim of an accident within the meaning of a policy of insurance practically identical with the terms of the policy here in question. The reasoning applied in that case supports the right of recovery here.

There was sufficient circumstantial evidence here to make the question one for the jury as to whether the insured without design, intention or premeditation got off the street car at the wrong place, thereby subjecting himself, through accident or mistake, to the rigors of the weather which concededly was unusually cold, for a longer period of time than was anticipated by him. The evidence negatives every other reasonable hypothesis. It is not reasonable to suppose that he would have undertaken to walk from the main section of Butte to his home, a distance of one and a half miles, with the temperature at 40 degrees below zero and with about two feet of snow. Had he done so he would not have gotten five blocks beyond his home to the place where he was found frozen. Had he taken a taxi or ridden with a friend in an automobile from the Rialto Theater to his home, it is unreasonable to suppose that he would have been discharged from the vehicle five blocks from his home, weather conditions considered. Facing 40 degrees below zero weather, and traveling against the wind, made the circumstances here just as hazardous as was the smoke in the *Dalbey Case*. That the death was produced by exposure and freezing the circumstances all tend to indicate, at least there was ample circumstantial evidence to warrant the jury in so finding.

The insured was thirty years of age, in good health, had never been ill, and was vigorous physically. He was appropriately dressed for that time of year. There were no bruises or other marks on his body. This case is very similar to that of *Ashley* v. *Agricultural Life Ins. Co.*, 241 Mich. 441, 217 N. W. 27, 28, 58 A. L. R. 1208, where recovery was allowed. In that case the insured became lost in the woods while hunting deer and froze to death. The court said: "Insured's becoming lost was not by design, volition or intent. It was not an expected or usual incident of hunting. It was unusual and unexpected,

fortuitous. He became lost accidentally. (1 C. J. 390.) His death was caused by accidental exposure to storm and frost. Freezing in and of itself is not an accident. (*Sherman* v. *Flint Spring Water Ice Co.*, 229 Mich. 648, 202 N. W. 936.) But if joined with a fortuitous, unusual, unexpected circumstance or event it may constitute an accident. (*Mauch* v. *Bennett & Brown Lumber Co.*, 235 Mich. 496, 209 N. W. 586.) Deceased suffered an accidental death. But it is contended that it was not produced through accidental means, or 'through external, violent, and accidental means.' These words just quoted were before the court in *United States Mut. Accident Assn.* v. *Barry*, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60, from which we quote: 'The court properly instructed [the jury] * * * that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected;' that if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means.' '' The court further said: ''So here, insured became lost accidentally, and thereby suffered accidental and enforced exposure to storm and frost and thereby died. The storm and frost were, in the season of the year and in this latitude, usual incidents of weather. They were not accidental. (1 C. J. 391.) But because of insured's accidental exposure to them, the storm and frost so joined with the exposure became the accidental means of death. We see no difference in principle where one mistakenly and fortuitously loses his way and falls into water to his death, and where one mistakenly and fortuitously loses his way in the forest and thereby falls, a victim of the elements.''

This case also comes within the principles followed in the case of *Richards* v. *Standard Acc. Ins. Co.*, 58 Utah, 622,

200 Pac. 1017, 17 A. L. R. 1183, where the unusual and unexpected act preceding the injury was miscalculation of distance. So in this case, the fact that the insured got off the street car at the wrong place—a fact which the jury was justified in finding—accidentally exposing himself to the storm which produced his death, was sufficient proof that his death was by accidental means to make the question one for the jury.

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICE ERICKSON, concur.

MR. JUSTICE MORRIS:

I concur in the result.

MR. JUSTICE STEWART:

I concur in the result but with some misgivings. The facts here are dangerously like those in the *Tuttle Case* cited, and which the majority opinion attempts to distinguish. The circumstances relied upon to take this case out of the rule recognized in the *Tuttle Case,* and which is the general rule everywhere, constitutes slender reeds upon which to depend, but they may be sufficient. They consist of the deductions that deceased must have been on the street car on his way home, and that he accidentally rode past his proper alighting place. There is little in the record to support that theory.

In the Michigan case, cited and relied upon, there was evidence that the deceased was actually lost; in fact, it was agreed that such was the case. There is no such evidence or agreement here.

This case does not come squarely within the rule of the *Dalbey Case;* it is rather between the *Tuttle* and *Dalbey Cases.* In the *Tuttle Case* there was no evidence at all of any antecedent accident. In the *Dalbey Case* there was convincing circumstantial evidence to that effect.

It seems to me that this case is, perhaps, more nearly within the rule of the *Tuttle Case* than of the *Dalbey Case;* but because the jury, the trial judge and the majority of my brethren of this court have seen circumstances, which have the weight of evidence, to distinguish in favor of plaintiff, I concur.